623 P.2d 853

**STATE of Arizona, Appellee,**

v.

**Tennis Brian BLEVINS, Appellant.**

**No. 1 CA–CR 4497.**

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 27, 1981.

457(C)(2),[1] and leaving the scene of an accident involving injury or death of another in violation of A.R.S. §§ 28–661 and 28–663. The first trial ended in a mistrial. At the second trial, the jury found Blevins guilty of both counts. Following entry of judgment of guilt, sentence was suspended on both counts and Blevins was given a one year period of probation. He has appealed from the judgments and suspended sentences. We have jurisdiction of his appeal from the judgments of guilt, the convictions, and the suspended sentences. A.R.S. §§ 13–4031, 13–4033.

On appeal in a criminal case we must view the evidence in a light most favorable to sustaining the conviction, resolving all reasonable inferences in favor of the State. *State v. Acree*, 121 Ariz. 94, 588 P.2d 836 (1978). The relevant facts are summarized below. James Larry Payne, the victim, and appellant were both members of the United States Air Force, stationed at Luke Air Force Base west of Phoenix. On the evening of May 26, 1978, some personnel from the base met at Hank's Bar in celebration of good results on a recent inspection. After the bar closed, 12 to 15 people bought some beer and began to drink outside. One witness observed appellant drinking a mixed drink at the bar and four to six beers after closing. Appellant told this witness that he had been at Hank's since approximately 10:00 P.M. At approximately 1:30 A.M. on the morning of May 27, the victim arrived outside the bar and began drinking also. The last of the group began to disperse around 3:45 A.M., at which time appellant was "drunk" in the opinion of one witness. The victim left the area, headed east on Glendale Avenue, riding a motorcycle. Shortly thereafter appellant also began driving east on Glendale Avenue in an automobile. Appellant testified at trial that while he was driving down Glendale Avenue, something appeared in his headlights and he swerved to avoid it. He testified that he slammed on his brakes and hit

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Debus & Busby, Ltd. by Larry L. Debus and Lawrence I. Kazan, Phoenix, for appellant.

## OPINION

O'CONNOR, Judge.

Based on events arising out of a collision between an automobile and a motorcycle in the early morning hours of May 27, 1978, Tennis Brian Blevins was charged with vehicular manslaughter in violation of A.R.S. §§ 13–455, 13–456(A)(3)(b) and 13–

1. References are to statutory designations prior to the effective date of the new Arizona Criminal Code, October 1, 1978.

a motorcycle that was lying in the road. He stated that he saw no one on the motorcycle. He jumped out of his car and ran around to the front and saw that the motorcycle was stuck in his right front fender. He attempted to pull the motorcycle from his fender, but was unable to do so. He looked around the immediate area and failed to see anyone. He then attempted to shake the motorcycle loose from his vehicle by driving on and off the road. His continued efforts were futile and his tire eventually went flat, forcing him off the road and into a tree near the New River bridge. A passerby helped him out of the vehicle and took him to a telephone booth where he called his roommate. The roommate testified that he received the phone call at approximately 4:30 A.M., and arrived at the telephone booth to pick up appellant around 4:50 A.M. Together, the two drank some coffee at a nearby restaurant for approximately an hour. They then drove toward where appellant had left his car but were stopped by a Maricopa County Sheriff's Office roadblock. They did not contact any officers at the roadblock because appellant had been drinking and was afraid to do so. They returned home.

Around 4:30 A.M., a Maricopa County Sheriff's Department deputy had been contacted by a witness who had seen a man lying near Glendale Road. The deputy accompanied the witness to the location and found James Larry Payne lying near the edge of Glendale Road. Payne's body exhibited no vital signs. A pathologist testified at trial that Payne had died from a fracture of the cervical spine. The injury was consistent with the State's theory that Payne's motorcycle had been struck in the rear by an automobile traveling at a greater rate of speed than his motorcycle.

Deputy Jacobs of the Maricopa County Sheriff's Department arrived at the accident scene at approximately 4:30 A.M., and took charge of the investigation. A deputy contacted appellant at his home at approximately 7:20 A.M., by telephone, and two detectives transported him to the location of his automobile. One of the deputies testified at trial that appellant had the odor of alcohol on his breath at that time. When appellant was brought back to the scene, deputy Jacobs gave him his *"Miranda"* warnings and discussed the accident with him. Appellant admitted owning and driving the automobile involved, and said that he had had one beer at Hank's after work and nothing to drink after the accident. He said that he did not know he had struck a motorcycle, and that he had walked home from the scene of the accident.

At trial, deputy Jacobs and Lamont Skousen testified for the State as motor vehicle accident reconstruction experts. They described the scene as they found it on that morning, including the damage to the two vehicles, the location of the two vehicles after they had come to rest, the location of the victim's body, the debris in the roadway, and the size and location of gouge, skid, and scuff marks on the pavement. Based on all the physical evidence, their measurements and computations, and their experience in the field of accident reconstruction, it was their opinion that appellant's automobile was traveling at a speed of 54 to 58 miles per hour, conservatively estimated, at the time of impact. The posted speed limit in that area of Glendale Avenue was 50 miles per hour. The speed of the victim's motorcycle immediately prior to impact was estimated at approximately 45 miles per hour. From examination of filaments in the damaged headlight of the automobile and the damaged taillight and brake light of the motorcycle, it was the witnesses' opinion that immediately prior to impact, the automobile headlights were on, the motorcycle taillight was on, and the motorcycle brake light was not on. From the damage to the two vehicles and remnants of a decal from the motorcycle which was found on the automobile, and from a fabric impression from the victim's clothing which was found on the hood of the automobile, it was their opinion that the motorcycle was upright and moving with the victim riding it when it was struck, and that it was struck directly from the rear by the automobile in a straight line, or at a 180 degree angle. Partly due to the location of

the victim's body at rest, approximately 250 to 300 feet from the point of impact, it was further opined that at the point of impact the front wheel of the motorcycle flipped up and back, pinning the victim on the hood of appellant's automobile, causing his body to be carried that distance from the point of impact. It was the ultimate conclusion of deputy Jacobs, who had spent three to four hundred hours reconstructing the accident, that appellant had been following the motorcycle too closely immediately prior to the time of the collision.

 Appellant first contends that the trial court erred in denying his motion for a judgment of acquittal at trial in regard to the vehicular manslaughter count, both because the State failed to prove that appellant had committed an unlawful act and because the State had failed to prove that any unlawful act of appellant was the proximate cause of the victim's death. Both of these arguments are directed toward the admittedly circumstantial nature of the State's case. Initially we note that rule 20, Arizona Rules of Criminal Procedure, provides that only "substantial evidence" is necessary to warrant submission of a case to the jury. Proof beyond a reasonable doubt, of course, is a jury question. *State v. Lippard*, 26 Ariz.App. 417, 549 P.2d 197 (1976). The substantial evidence required to warrant a conviction may be either circumstantial or direct. *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978). The probative value of evidence is not reduced simply because it is circumstantial. *Justice v. City of Casa Grande*, 116 Ariz. 66, 567 P.2d 1195 (App.1977). The probative value of direct and circumstantial evidence is essentially similar, and there is no distinction as to weight assigned to each. A conviction may be sustained on circumstantial evidence alone. *State v. Green*, 111 Ariz. 444, 532 P.2d 506 (1975). The prosecution is no longer required, in a case based wholly upon circumstantial evidence, to negate every conceivable hypothesis of innocence. *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App. 1978).

██ Appellant was charged under the manslaughter statute which provided in part as follows:

§ 13–456. Kinds of manslaughter

A. Manslaughter is of three kinds:

\* \* \* \* \* \*

3. In the driving of a vehicle:

\* \* \* \* \* \*

(b) In the commission of an unlawful act, not amounting to felony, without gross negligence.

The prosecution relied upon three different unlawful acts to establish the manslaughter: speeding, in violation of A.R.S. § 28–701; following too closely, in violation of A.R.S. § 28–730; and driving while intoxicated, in violation of A.R.S. § 28–692(A). We have reviewed the record of the trial, including the qualifications of the expert witnesses and the foundations for the testimony which led to their opinions. *See* rules 702 to 705, Arizona Rules of Evidence. The admission of this testimony was discretionary with the trial court. *See State v. Mosley, supra.* Upon the whole record, it is our opinion that the circumstantial evidence presented at trial, supplemented by the opinions of the expert witnesses, provided substantial evidence that appellant committed one or more unlawful acts, not amounting to a felony, which caused the death of the victim. We find no error in the conviction and sentence for vehicular manslaughter.

██ With regard to the conviction for leaving the scene of an accident, appellant contends that the State failed to establish by substantial evidence his knowledge of the personal injury of the victim. Because the jury was not adequately instructed on this issue, the conviction must be reversed. However, in our opinion the evidence was sufficient to support the conviction if the proper instruction had been given.

A.R.S. § 28–661(A) provides:

The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then

forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of § 28–663.[2] Every such stop shall be made without obstructing traffic more than is necessary.

In *State v. Porras*, 125 Ariz. 490, 610 P.2d 1051 (App.1980), this Court determined that liability under A.R.S. § 28–661 attaches only where a defendant has actual knowledge of the personal injury or knowledge that the accident was of such a nature that one would reasonably anticipate that it resulted in personal injury. In this case, the jury was instructed in terms of a verbatim recitation of A.R.S. § 28–661(A). A general intent instruction was also given, as follows:

> You are further instructed, ladies and gentlemen, that to constitute a crime there must be a combination of act forbidden by law and an intent to do the act. Intent may be inferred from the defendant's voluntary commission of an act forbidden by law, and it is not necessary to establish that the defendant knew his act was a *violation of the law.*

No such instruction was given on the crucial element of knowledge of personal injury or knowledge from which one would reasonably anticipate personal injury to another. Appellant did not request an instruction as to the knowledge requirement of A.R.S. § 28–661(A).

> In matters of a fundamental nature, the trial judge is required to instruct the jury on his own motion, even if not requested by the defense, and failure to instruct the jury on a matter vital to the rights of the defendant creates fundamental error. [citation omitted]

*State v. Miller*, 120 Ariz. 224, 226, 585 P.2d 244, 246 (1978). *See also State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978); *State v. Evans*, 109 Ariz. 491, 512 P.2d 1225 (1973).

At trial, appellant vigorously contested his knowledge of any injury to a person on the motorcycle. While he admitted hitting the motorcycle, he denied ever seeing anyone or knowing that anyone had been injured and maintained consistently that the motorcycle had been lying down in the road when he hit it. The extent of appellant's knowledge of a personal injury or of facts which would lead one to reasonably anticipate that personal injury had resulted from the collision was the chief issue of the case relating to the charge of leaving the scene of the accident. An instruction on the issue was vital to the rights of the appellant on these facts. Failure to instruct the jury on the issue of the knowledge required was fundamental error in this instance. The conviction for leaving the scene of an accident must be reversed.

The conviction and imposition of probation on count one, vehicular manslaughter, are affirmed. The conviction and imposition of probation on count two, leaving the scene of an accident involving injury or death to another, are reversed. Count two is remanded for a new trial.

OGG, P. J., and WREN, J., concur.

---

2. A.R.S. § 28–663 imposes on the driver of any vehicle involved in an accident causing injury or vehicle damage a duty to give information and render aid to the injured.