704 P.2d 270

**The STATE of Arizona, Appellee,**

v.

**John Paul SHEKO, Appellant.**

**No. 2 CA–CR 3479.**

Court of Appeals of Arizona,
Division 2, Department B.

April 25, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Regula Case, Tucson, for appellant.

OPINION

LACAGNINA, Judge.

Appellant John Paul Sheko was charged by indictment with one count of theft over

$1,000 and one count of burglary in the third degree. After the court's denial of his motion to suppress, the parties agreed to a dismissal of count one with prejudice and submitted count two to the trial court on the basis of previously heard testimony and police reports. Sheko was convicted of burglary, and the court suspended sentence for three years, placing him on probation with a condition of six months time served in the county jail. Appellant Sheko urges reversal claiming the trial court erred in denying his motion to suppress. Specifically, Sheko argues the following:

1. The police lacked probable cause when they arrested him, and

2. He did not give a valid consent to a search of his person at the time.

We disagree and affirm.

We view the facts in the light most favorable to support the trial court's ruling on the motion to suppress. *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977); *State v. Warren*, 124 Ariz. 279, 603 P.2d 550 (App. 1979). On June 12, 1983, at approximately 8:30 a.m. Officer Taylor of the Tucson Police Department went to the Home Plate Bar in response to a call about a burglary. When he arrived, he observed blood on the concertino wire fence surrounding the property and also on a wooden spool next to the fence and a plastic bucket on top of the spool. He followed the trail of blood to the southeast corner of the bar to an office door which had been pried open and the room ransacked, and then into the kitchen and bar area where two coin boxes had been forced open and approximately $2,000 in cash taken, a large amount of change and a number of cash register and vending machine keys. The burglary occurred sometime between 2:00 a.m. and 8:20 a.m.

Following an inquiry of Tucson area hospitals, Officer Taylor learned Sheko had been treated for a hand injury which required stitches at Arizona Medical Center at approximately 4:30 a.m. and that it was the only hospital reporting any similar injuries during the time in question. Officers Taylor and Mackin then went to Sheko's home, joined by Sergeant Hermes where they observed blood on the concrete slab outside the apartment and also on the dash board of a vehicle parked near the apartment. After getting no response to several knocks on the front door, Officer Taylor, who heard voices inside the house, announced his presence. Sheko's mother then answered the door and said he was not there. Officer Taylor told her he had heard her talk to someone and would she please have him come to the front door. She went back in, and a subject inside stated, "Don't worry. Everything is going to be all right." Sheko then came to the front door wearing jeans and brown boots, both bloodstained, with his right hand bandaged past the wrist. Taylor asked him to step outside and immediately advised him of his *Miranda* rights, and Sheko indicated he understood them.

Officer Taylor began questioning Sheko, who denied knowing anything about the burglary and claimed he had injured his hand while jogging, pointing to otherwise clean jogging shoes. Officer Taylor then spoke to Sheko's mother, who said her relative owned the Home Plate Bar. Sheko's stepfather said he had taken Sheko to the hospital immediately after the injury, between 1:00 and 1:30 in the morning. Officer Taylor then spoke again with Sheko, who had remained outside during this time, and noticed large bulges in his front pockets. When asked about them, Sheko reached in and pulled out a cigarette lighter and later, a large amount of change, quarters and half dollars. Officer Taylor reached out to touch the bulge in Sheko's left pocket and felt something hard and slim. Thinking it might be a knife, he asked what it was. Sheko pulled out a large number of keys on several key chains and a pen knife and stated that he collected keys. Sheko's mother said that he had only a key to the house. Officer Taylor recognized the keys as those used to open vending machines and cash registers as had been previously described to him. At that point he placed Sheko under arrest and seized the items.

Officer Taylor then returned to the Home Plate Bar where several machines were opened with the keys. After obtaining a search warrant, he then returned to the Sheko's house and seized approximately $1,700 in cash together with ten checks made out to the Home Plate Bar found hidden in a linen closet.

The trial court found by a preponderance of the evidence that the items were lawfully discovered as the result of a search valid under the *Terry v. Ohio* rule and thereby denied the motion to suppress. In the absence of a clear and manifest error, we will not interfere with a trial judge's denial of a motion to suppress, *State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978); *State v. Dupuy*, 116 Ariz. 151, 568 P.2d 1049 (1977), and will affirm the trial court's correct decision even if it was reached for the wrong reason. *State v. Dugan*, 113 Ariz. 354, 356, 555 P.2d 108, 110 (1976). See also *State v. Koch*, 138 Ariz. 99, 102, 673 P.2d 297, 300 (1983).

We find no such error and affirm.

Officer Taylor acted properly in investigating Sheko, and the following facts support that conclusion:

1. He knew the burglar had received an injury similar to Sheko's during the same time period;

2. Sheko's was the only reported treatment of such an injury during that time period;

3. Upon reaching the house, Officer Taylor saw blood both on the concrete slab outside the house and on the car dashboard; and

4. Although he heard voices inside the house, he got no response to the first knocks on the door, and when Sheko's mother came to the door, she said that he was not home.

Based on the above series of events, Officer Taylor testified that he felt Sheko could be a possible suspect in the burglary, so he issued the *Miranda* warning.

During the next 15 minutes, while Officer Taylor continued his investigation, he developed facts to support a reasonable suspicion that criminal activity had occurred. *State v. Will*, 138 Ariz. 46, 672 P.2d 1316 (1983). This included the discrepancies in Sheko's stepfather's story about the trip to the hospital, Sheko's incredible story about being injured while jogging, his nervous behavior, Sheko's mother's statement that her relative owned the Home Plate Bar, and her lying about Sheko's being at home. Taken as a whole, the circumstances gave Officer Taylor sufficient information to justify his belief as an officer that an offense had been committed. *Id.* Indeed, the information regarding Sheko's injuries and the time of treatment correlates with the burglary report and by itself suggests substantial evidence that Sheko was the individual who committed the burglary. See *Winston v. Lee*, —— U.S. ——, ——, 105 S.Ct. 1611, 1619, 84 L.Ed.2d 662 (1985).

The events from that point forward indicate Sheko's valid consent to a search of his person, with the *Miranda* warning previously given and understood. See *State v. Laughter*, 128 Ariz. 264, 625 P.2d 327 (1980).

We affirm the trial court's denial of Sheko's motion to suppress and the conviction and sentence.

HATHAWAY, P.J., and LIVERMORE, J., concur.