718 P.2d 1030

**The STATE of Arizona, Appellee,**

v.

**Francisco CANTUA–RAMIREZ, Appellant.**

**No. 2 CA–CR 3808.**

Court of Appeals of Arizona, Division 2, Department B.

April 9, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Barbara A. Jarrett, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frederick S. Klein, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

On September 20, 1984, the appellant was convicted of intentionally or knowingly abusing a child under circumstances other than those likely to produce death or serious physical injury, a class 4 felony. A.R.S. § 13–3623(C)(1). The appellant was tried in absentia, the court having found that his failure to appear for trial was voluntary, and was sentenced to four years' probation. The primary issue raised on appeal is whether the doctrine of transferred intent is applicable where the crime intended is of a lesser degree than the crime charged. We find the doctrine applicable and affirm.

The relevant facts are as follows. On October 26, 1983, the appellant and his girlfriend, Patricia, were drinking beer together when they began to argue about their baby. Patricia was holding the couple's two-month-old baby facing forward with the baby's back against her shoulder. During the heat of the argument the appellant said he would rather see the baby dead, and that if Patricia had not had the baby, they would not be together. At some point the appellant hit the walls of the house and punched some holes in them. When Patricia tried to call the police, he pulled out the telephone, breaking it. The

argument ended abruptly after the appellant "threw a hit," striking the baby in the face, and the baby began to cry. The appellant ran into the front yard and was followed by Patricia. He began crying and said he was sorry he had struck the baby and that he was drunk. He then left on foot. Patricia and the baby were taken to a hospital by ambulance. The appellant returned to the house about 45 minutes later and told the police that he had accidentally hit the baby while trying to hit his girlfriend. The baby developed a bruise on her face that remained for a week, but suffered no permanent injuries.

Disregarding for the moment the possible application of the doctrine of transferred intent, the appellant argues that the trial court erred in refusing to grant a directed verdict of acquittal because the state failed to prove the requisite *mens rea.*

Under A.R.S. § 13–3623(C)(1) a person who *intentionally* or knowingly causes a child to suffer physical injury is guilty of child abuse, a class 4 felony. "Intentionally" means "with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct." A.R.S. § 13–105(5)(a). The appellant argues that there was no evidence from which a rational trier-of-fact could have found that the appellant intentionally struck the child.

■ A court will not grant a motion for acquittal when reasonable minds could differ on the inferences to be drawn from the evidence. *State v. Just,* 138 Ariz. 534, 675 P.2d 1353 (App.1983). There was conflicting evidence as to whether the appellant intentionally struck the baby in the face with his fist. Patricia's statement to the police after the incident was that the appellant had specifically intended to hit the child. At trial, however, she testified that he did not intend to hit the child. The appellant told the police that he had intended to strike Patricia and struck the child accidentally. There was also evidence that, prior to hitting the child, the appellant said

he would rather see the baby dead. Given the conflicting evidence, the jury could have found that the appellant intentionally struck the baby. The court was therefore correct in denying the motion.

■ The appellant argues that the court erred in giving the jury the following instruction on transferred intent:

If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if the actual result differs from that intended or contemplated only in the respect that a different person is injured or affected.

The doctrine of transferred intent applies in the "bad aim" situation where the defendant intended to hit one party but missed and accidentally hit another. Under the doctrine the defendant's felonious intent toward the intended victim is transferred to the unintended victim who is actually injured. W. Lafave & A. Scott, Criminal Law, 252–253 (1972); *State v. Gunter,* 132 Ariz. 64, 643 P.2d 1034 (App.1982).

The trial court's instruction was based on Arizona's transferred intent statute, A.R.S. § 13–203(B)(1), which provides:

B. If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if:

1. The actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or extensive than that caused....

The instruction did not cover the following subparagraph of A.R.S. § 13–203(B):

2. The actual result involves similar injury or harm as that intended or contemplated and occurs in a manner which the person knows or should know is rendered substantially more probable by such person's conduct.

Under the facts of this case, this alternative provision is also applicable.

The appellant argues that under the Model Penal Code (M.P.C.), after which Arizona's statute is fashioned, intent cannot be implied where the offense contemplated (assault on an adult, a class 1 misdemeanor) is not equivalent to the offense that was committed (intentional or knowing child abuse, a class 4 felony).

A.R.S. § 13–203(B)(1) is taken from Model Penal Code § 2.03(2)(a) (1985). A footnote following this M.P.C. section explains that where the harm caused is more extensive or serious than the harm designed or contemplated, the defendant would not be liable for the excess. The example given is an attack that results in death, though only intended to cause injury. The actor would not be guilty of murder. Id. comment 3, n. 15.

Professor Paul H. Robinson suggests that the M.P.C.'s equivalent to subsection (B)(1) would impose liability even though the crime which occurred was of a higher degree than the one intended. P.H. Robinson, *Imputed Criminal Liability*, 93 Yale L.J. 609, 649 n. 151 (1984). For example, where the defendant shoots at but misses a civilian victim and accidentally hits an on-duty police officer, the defendant would be guilty of a more serious harm in a jurisdiction which distinguishes between injury to a civilian and injury to an officer. Id. Another example is an arsonist who sets fire to what he believes is an unoccupied building but the building is actually occupied. In Arizona the defendant would be punished more severely for the arson of an occupied structure. These examples differ from the one given in the comment to the M.P.C. in that the harm which occurred was not more extensive than the harm intended, it merely imposed a greater penalty.

■■ In the case at bar the appellant, at a minimum, intended to strike the baby's mother. The intent was formed and the *act attempted while the mother held the* baby at shoulder height, facing forward. Subsection (B)(1) of Arizona's transferred intent statute applies where the actual result of the appellant's conduct differs from that intended "only in the respect that a different person ... is injured." The appellant intended an assault on the mother, and an assault on the baby resulted. Had he succeeded in striking the baby's mother, the injury which resulted would most likely be a bruise or laceration. The injury actually suffered by the baby—the unintended victim—was a facial bruise which persisted for one week. The injury was the same; the only difference was the classification of the offense as a felony instead of a misdemeanor and the range of imposable punishment. We believe the transferred intent instruction was properly given.

In his reply brief the appellant further argues that subsection (B)(2) also prohibits the application of the transferred intent doctrine when the offense intended is not of the same degree as the offense committed, citing the M.P.C. for that proposition. There is one critical difference, however, between Arizona's statute and the equivalent in the M.P.C. Subsection (B)(2) of our statute applies where the actual result involves "similar injury or harm" as that intended. Its equivalent in the M.P.C. applies when the actual result involves "the same kind" of injury or harm as that intended. M.P.C. § 2.03(2)(b).

The appellant cites one commentator's suggestion that the M.P.C.'s "same-in-kind" requirement:

> might be regarded as a device for barring liability when the harm that actually occurs does not give rise to the same offense as the harm anticipated or risked by the offender. "Kind," under this construction, is taken as referring to "legal kinds," *i.e.*, classes of harm that give rise to the same offense.

Note, *Causation in the Model Penal Code*, 78 Colum.L.Rev. 1249, 1272 (1978). A more thorough reading of the article reveals an alternative possibility suggested by the commentator: that the same-in-kind language be left to the discretion of the trier-of-fact to determine in each case whether the actual harm is sufficiently like the

harm intended that liability should be imposed. Id. at 1273. The author's footnote cites Arizona's similar-in-kind language as being "a more explicitly flexible standard" than that of the M.P.C. Id. at 1273 n. 71.

■ While the appellant argues that the difference in language is of no importance, we must believe that the legislature had some reason for adopting the M.P.C. version virtually verbatim with this exception and we agree with the cited article that the language was intended to make Arizona's statute more flexible.

As we have noted in the case at bar, the intended injury and the injury which resulted were sufficiently similar to satisfy the first part of subsection (B)(2). The second requirement of subsection (B)(2) is also satisfied in that the actual result occurred in a manner which the appellant knew or should have known was substantially more probable by his conduct.

■ The appellant argues that the transferred intent instruction was incomplete because it did not advise the jury that the doctrine also applies where the culpable mental state is reckless or criminal negligence. A.R.S. § 13–203(C). Child abuse committed recklessly, under circumstances other than those likely to produce death or serious physical injury, is a class 5 felony. If done with criminal negligence, it is a class 6 felony. A.R.S. § 13–3623(C)(2) and (3). No such instruction was requested, nor did the appellant's objection to the transferred intent instruction request that the instruction be modified to include this law. Any error was waived and we find that the failure to so instruct was not fundamental error because the jury could have found the appellant's conduct to be reckless or criminally negligent without resort to the provisions of A.R.S. § 13–203(C).

The jurors were given a form of verdict which, if they found the appellant guilty of child abuse, required them to designate whether they found that the appellant acted (1) intentionally or knowingly, (2) recklessly, or (3) criminally negligent. The jury found that he acted intentionally or knowingly. It could, particularly with the evidence of the appellant's intoxication, have found that the child abuse was the result of either of the less culpable mental states.

Pursuant to A.R.S. § 13–105(5)(c), the jury was instructed that:

"Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

The court also instructed pursuant to A.R.S. § 13–105(5)(d) that criminal negligence means:

"Criminal negligence" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

The verdict of intentional child abuse comports with the great weight of evidence. There was no fundamental error.

■ Finally, the appellant argues that the prosecutor committed reversible error by arguing to the jury that the appellant's case was analogous to that of a drunk driver who kills someone. Such an analogy was permissible because of the appellant's intoxication. The drunken driver does not intend to commit manslaughter. The appellant may not have intended child abuse. We find no error.

Affirmed.

LIVERMORE, P.J., and LACAGNINA, J., concur.