824 P.2d 768

**The STATE of Arizona, Appellee,**

v.

**Cameron Mark WEBSTER, Appellant.**

**2 CA–CR 91–0080.**

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 19, 1991.

Review Denied March 3, 1992.*

Grant Woods, Atty. Gen. by Paul J. McMurdie and Eric J. Olsson, Tucson, for appellee.

La Barge and Holmes by Robb P. Holmes, Tucson, for appellant.

OPINION

HOWARD, Judge.

Following a jury trial, appellant was convicted of unlawful possession of a narcotic drug for sale, a class 2 felony. He admitted two prior convictions and was sentenced to a presumptive term of 15.75 years' imprisonment.

On appeal, appellant raises two issues: 1) the trial court erred in refusing to suppress the contraband as the product of an illegal detention, and 2) there was insufficient evidence to support a conviction for possession for sale.

We review the facts presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *State v. Sheko*, 146 Ariz. 140, 704

* Feldman, C.J., and Zlaket, J., of the Supreme    Court, voted to grant review.

P.2d 270 (App.1985). So viewed, the facts are as follows. At approximately 10:20 p.m. on August 7, 1990, Officer Garcia was driving a police vehicle with Officer Colter in a neighborhood "noted for gang activity." He passed a yellow BMW driving in the other direction and noted that one of its taillights was inoperative. He made a U–turn, activated his emergency lights and followed the BMW for one block to where it pulled into a yard. The driver and two passengers got out of the vehicle and began to walk away.

Appellant, the front seat passenger, was wearing a red shirt, red hat, and red tennis shoes, which indicated to the officer that he was "possibly" a member of the Blood gang. For "officer safety purposes," Garcia testified that he twice yelled at appellant to get back into the car. Garcia agreed, however, that at no point was he afraid that appellant presented an immediate "safety hazard" to him. Appellant complied with the order after Officer Colter "walked up to him and had a conversation with him," and the other two men returned to the vehicle as well.

As the two passengers sat in the car and Officer Garcia spoke with the driver, a back-up unit arrived and Officer Moser ran a records check on the men. Although no outstanding warrants were reported, Moser testified that he was advised that appellant "was to be considered armed and dangerous." Moser then ordered appellant and the other passenger out of the car so that he could "watch their hands and make sure there was no weapons on them." Moser testified, however, that he had no reason to detain appellant and that if he had decided to leave, Moser would have let him go.

The two men stood several feet apart in front of an abandoned vehicle while the driver was questioned. Moser testified that appellant wore two pagers on his belt which "beeped" a number of times during this period. Then, as Moser stood to one side, he observed appellant unzipping the fly of his pants and removing something which fell to the ground. When appellant saw that Moser was watching him, he tried to cover the package with his foot. Moser picked up the package, which contained approximately 26 pieces of crack cocaine, and placed appellant under arrest. An experienced narcotics officer testified that drug dealers frequently wear pagers and that mere users seldom carry more than one or two "rocks" of cocaine.

Appellant argues that Officer Garcia's command to him to return to the car was a "seizure" within the meaning of the fourth amendment, for which there were no legal grounds. Because the discovery of the contraband resulted from the illegal seizure, he argues, it must be suppressed. He also argues that the state failed to present substantial evidence that the cocaine was possessed for sale. We disagree and affirm.

The narrow issue here is whether it was unreasonable for Officer Garcia to ask appellant to get back into the automobile that had been legally stopped. We believe the principles set forth in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), control and support the trial court's ruling. The court in *Mimms*, in addressing the issue of the reasonableness of governmental intrusion under the fourth amendment, first looked to that side of the balance which bears the officer's interest in taking the action that he did. The officer in *Mimms* apparently made it his standard practice, in order to protect his safety, to order all drivers out of their vehicles as a matter of course whenever he made a routine traffic stop. The state justified this action on the basis that establishing a face-to-face confrontation diminishes the likelihood of an assault.

The Court noted the risks that police officers confront when making traffic stops and agreed that the safety of the police officer is a legitimate and weighty concern. The Court noted that " 'a significant percentage of murders of police officers occurs when the officers are making traffic stops.' " 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 337, quoting *United States v. Robinson*, 414 U.S. 218, 234 n. 5, 94 S.Ct. 467, 476 n. 5, 38 L.Ed.2d 427, 440 n. 5 (1973). The Court then balanced the interest of police safety against the intru-

sion into the driver's personal liberty interest occasioned by the order to get out of the car. The Court described the intrusion as "*de minimis*" and said that "[w]hat is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337.

While *Mimms* involved the driver of the vehicle rather than a passenger, Justice Stevens, writing for the dissenters in *Mimms*, acknowledged that "the Court's logic necessarily encompasses the passenger." 434 U.S. at 122, 98 S.Ct. at 339, 54 L.Ed.2d at 344. Additionally, in his concurring opinion in another case construing *Mimms*, Justice Powell stated: "Last Term, this Court determined in *Pennsylvania v. Mimms* ... that passengers in automobiles have no Fourth Amendment right not to be ordered from their vehicle, once a proper stop is made." *Rakas v. Illinois*, 439 U.S. 128, 155 n. 4, 99 S.Ct. 421, 436 n. 4, 58 L.Ed.2d 387, 409 n. 4 (1978).

■ If a passenger can be ordered out of a vehicle for the officer's safety, he can also be ordered back inside the vehicle for safety purposes. In fact, it may be even less of a privacy intrusion to order him back inside the car which is where he was prior to the stop. We cannot allow the officer's safety to depend on how fast the driver and passenger can get out of the vehicle after it has been stopped. Ordering the occupants back into the vehicle does no more than establish the status quo at the time of the stop. To hold otherwise could well lead to the unnecessary death of an officer, gunned down by those walking away who suddenly turn and fire or who circle behind the officer, either assaulting or killing him while he is talking to the driver.

We note that the dissent argues that because Garcia did not feel threatened, it was not necessary, for safety purposes, to order appellant back into the vehicle. The same argument was rejected in *Mimms*.

■ Contrary to appellant's contention, the trial court did not err in denying his motion for acquittal. Criminal convictions may rest solely on circumstantial proof. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). Circumstantial evidence has no less probative force than direct evidence. *State v. Blevins*, 128 Ariz. 64, 623 P.2d 853 (App.1981). The court should not grant a motion for acquittal when reasonable minds could differ on the inferences to be drawn from the evidence. *State v. Cantua–Ramirez*, 149 Ariz. 377, 718 P.2d 1030, (App.1986). Given the evidence, reasonable jurors could find that appellant possessed the crack cocaine for sale.

Affirmed.

LACAGNINA, P.J., concurs.

LIVERMORE, Chief Judge, dissenting.

Implicit in the court's ruling is the proposition that in every case in which police may stop a person, even for something as minor as driving with a broken taillight, they may seize anyone with the person stopped. Of course, any time a car is stopped everyone within it is stopped. It does not seem to me to follow, though, that those incidentally stopped are powerless to leave if they wish to and instead must remain involuntarily under police control until the police decide otherwise. Their detention is not supported by reasonable suspicion. The detention, if justified by considerations of officer safety, has to be premised on the notion that any stop creates a significant risk that those associated with the person stopped will attempt to harm the officer. That may be true when the reason for the stop is serious criminal activity. It cannot, it seems to me, be seriously argued that because danger exists sometimes, it must be assumed always to exist so as to justify the seizure of everyone present when anyone is stopped for whatever reason.[1] No argument is made, specific to the facts of this case, that the officer felt the seizure was necessary for his safety. He testified otherwise. In-

---

1. *Mimms* treats as *de minimis* an order to one, already properly seized, to get out of a car. That surely cannot be read as treating a seizure itself as *de minimis*. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

stead it is justified on the broad rule that routine seizures may occur for officer safety regardless of the facts of the case. That rule, permitting wholesale seizures without individual justification, conflicts with the fourth amendment.