Gregory L. HAWKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–57.

District of Columbia Court of Appeals.

Argued April 18, 2006.

Decided June 22, 2006.

---

Kenneth D. Auerbach, Silver Spring, MD, appointed by the court, for appellant. Douglas Wham, appointed by the court, filed a brief for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and David B. Goodhand, Assistant United States Attorney, were on the brief, for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

After considering a stipulated record and testimony offered at a previous motions hearing, the trial court found appellant, Gregory Hawkins, guilty of Carrying a Pistol Without a License, in violation of D.C.Code § 22–4504(a), Possession of a Firearm, in violation of D.C.Code § 7–2502.01, Unlawful Possession of Ammunition, in violation of D.C.Code § 7–2506.01(3), and Unlawful Possession with Intent to Distribute a Controlled Substance (Marijuana), in violation of D.C.Code § 48–904.01(a)(1). Hawkins argues that because the initial traffic stop was unlawful, the resulting search of the vehicle was illegal and the marijuana and firearm recovered should have been suppressed. Finding no error, we affirm.

In February 2003, at approximately 5:00 p.m., Metropolitan Police Officer Robert Underwood, stopped Hawkins for an improperly displayed rear license plate. The tag was placed in the back window of the vehicle, and, as described by Officer Underwood, it was "pushed into the carpet area to keep it standing up." As Officer Underwood pulled up behind the stopped vehicle with his lights on, Hawkins got out of the vehicle and began to walk away. Officer Underwood ordered Hawkins to return to his vehicle and he complied.

After Hawkins got back into his vehicle, Officer Underwood and his partner approached and asked for his license and registration. As Hawkins began searching for the documents, Officer Underwood noticed what appeared to be a small marijuana cigarette on the front seat of the car to the right of Hawkins' right leg. Officer Underwood asked to see the cigarette and Hawkins handed it to him. Officer Underwood had also smelled the odor of marijuana emanating from the car when Hawkins opened the door to return to the vehicle. In the resulting search of the vehicle following the arrest, the officers found a fully loaded nine-millimeter Keltec gun under the driver's seat and a large ziploc bag that contained twenty small ziploc bags that contained what later tested positive for marijuana.

■ Hawkins argues that the license plate was properly displayed pursuant to the applicable regulations. 18 DCMR § 422.1 (Weil) provides:

Whenever a motor vehicle or trailer for which District of Columbia registration is required is being operated or left standing upon any public highway, such vehicle shall display two (2) current identification tags, one (1) on the front and the other on the rear; except that motor vehicles need only display a special use identification tag on the rear of the vehicle only.

18 DCMR § 422.4 (Weil) provides:

Owner identification tags shall at all times be securely fastened in a horizontal position to the vehicle for which they are issued so as to prevent the tags from swinging and at a height of not less than twelve inches (12 in.) from the ground, measuring from the bottom of the tags, in a place and position to be clearly visible.

Hawkins contends that the former regulation does not specifically require that the license plate be affixed to the rear bumper or trunk area as the trial court found. It only requires that the license plate be placed somewhere in the rear of the car. He also argues that while the placement in the rear window is not the usual place, it was not in violation of the regulation. Therefore, the traffic stop was illegal and the evidence obtained in the resulting search should not have been admitted against him.

The government contends that 18 DCMR §§ 422.1, 422.4 read together implicitly provide that the proper placement of the license plate is on the rear portion of the vehicle and not in the rear window.[1]

It also argues that the trial court did not err in also ruling that the license plate was improperly placed because it was not securely fastened. *See* 18 DCMR § 422.4 (Weil). Because Hawkins has not been formally charged with a violation of these regulations, we need not decide whether, in these circumstances, either regulation was in fact violated. It is sufficient for our purposes here to conclude that the officers had an objective reason to believe that Hawkins' license plate did not comply with the applicable regulations because it was not "securely fastened" to his vehicle, and that the police therefore were authorized to investigate the matter by initiating a traffic stop. *See United States v. Glover*, 851 A.2d 473, 476 (D.C.2004) (officers had an objective reason to believe that [appellant] was committing a civil traffic infraction in their presence because they saw the front license plate displayed on the dash board instead of being mounted on the front of the car); *see also State v. Murphy*, 238 N.J.Super. 546, 570 A.2d 451 (App.Div. 1990) (officer's belief that a license plate stuck in the weather-stripping of rear window violated licensing display provisions of state motor vehicle statute was "objectively reasonable").

■ Hawkins also argues that the trial court erred in finding that it was reasonable for the police to order him to return to his vehicle and erred in concluding that the discovery of the gun and drugs was the inevitable result of asking for his license and registration once he returned to the vehicle. He contends that the order for him to return to his vehicle was an additional Fourth Amendment intrusion requiring an additional level of objec-

---

1. Moreover, 18 DCMR § 731.1 provides: "No person shall drive any motor vehicle with any sign, poster, or other non-transparent material upon the front windshield, sidewings, or side or rear windows of the vehicle, except a sticker authorized by the Mayor, Public Service Commission, the Joint Board, or the Director."

tive justification. He maintains that the additional justification was lacking because there was no articulable suspicion of any safety concerns relating to Hawkins or for anyone involved in the encounter that could not have been met by allowing Hawkins to remain outside the vehicle. Finally, he claims that the police only found the contraband by intruding on his Fourth Amendment rights thus gaining a vantage point to see inside his vehicle that would not have been achieved had Hawkins not been ordered back to his vehicle. We disagree with each of these claims.

The Supreme Court has made it clear that the police have the discretion to exercise control over the driver and passengers of a vehicle that is legitimately stopped even if the police have no suspicion that the individuals are involved in criminal behavior, see *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). In those cases, the Court upheld the directives to the driver (*Mimms*) and passengers (*Wilson*) to exit the vehicle after it was legitimately stopped. There are few cases, however, that address specifically whether the police may do the opposite, *i.e.*, order the driver who has voluntarily exited the vehicle to return to it. Those courts that have considered this issue, however, have all held that the police may properly order those who have exited the vehicle to return to it.

For example, a New York appellate court has observed that "[t]he contention that it is more intrusive to individual liberty to require a passenger to stay in the vehicle that he or she had just been volun-tarily occupying prior to the stop is supported by neither specific reference nor common sense." *People v. Forbes*, 283 A.D.2d 92, 728 N.Y.S.2d 64, 66 (2001). Other courts have held that it is even less of a privacy intrusion to order a passenger back in the car where he was prior to the stop than to order a passenger out of the car. *Id.* at 66–67; *State v. Webster*, 170 Ariz. 372, 824 P.2d 768, 770 (Ct.App.1991). Officer safety should not "depend on how fast the driver and passenger can get out of the vehicle after it has been stopped . . . to hold otherwise could well lead to the unnecessary death of an officer, gunned down by those walking away who suddenly turn and fire or who circle behind the officer." *Id.* at 770.

■ We have found no authority, and Hawkins has not cited any, holding that Fourth Amendment rights are violated by requiring the driver to return to the car.[2] We think, if the police can order a passenger to exit or remain in a vehicle, then the police can certainly order the driver to return to his vehicle for safety reasons. *See Borski v. State*, 712 So.2d 787, 788 (Fla.Dist.Ct.App.1998) ("rationale of *Mimms* and *Wilson* applies with equal force to uphold the constitutionality of a police officer's directive to the driver to remain in, or return to, the vehicle during a lawful traffic stop"); *see also People v. Castellon*, 76 Cal.App.4th 1369, 1375, 91 Cal.Rptr.2d 204, 207–08 (1999) (reasoning that it was for the officer to decide whether his safety was better preserved by ordering (the defendant) to stay inside the car or by ordering him out of the vehicle). For these reasons, we conclude, as did the courts cited above, that in these circumstances, there was no Fourth Amendment

**2.** Officer Underwood testified that Hawkins was no more than two or three feet from the driver's side door when he directed him to return to the vehicle. We express no view whether the officer retains the power to order a defendant to return to his vehicle if the defendant is a significantly greater distance away.

violation when the officer ordered Hawkins *to return to the vehicle.* As a result, the motion to suppress was properly denied.

*Affirmed.*