NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BENNY PAUL, *Appellant.*

No. 1 CA-CR 16-0262
FILED 5-23-2017

Appeal from the Superior Court in Yavapai County
No. P1300CR201400061
The Honorable Jennifer B. Campbell, Judge
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

David Goldberg Attorney at Law, Fort Collins, CO
By David Goldberg
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

_____

**C A T T A N I**, Judge:

¶1            Benny Paul appeals his convictions and sentences for transportation of marijuana for sale and possession of drug paraphernalia. Paul argues the superior court erred by denying his motion to suppress the evidence discovered after a traffic stop and subsequent canine search of his car.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            In May 2013, Yavapai County Sheriff's Deputy Lopez, a canine handler assigned to a narcotics task force, was stopped in the median of I-40, observing eastbound traffic.  He watched as Paul, driving approximately 75 mph, caught up to a semi truck travelling about 65 mph in the slow lane.  When Paul passed Deputy Lopez, he was in the slow lane following about one car length behind the truck, and he stayed at that distance for several hundred yards.  Deputy Lopez then pulled out onto the interstate and, driving in the fast lane, began to catch up.  When the deputy was within about four or five car lengths, Paul changed lanes into the fast lane without signaling.  After Paul passed the truck, Deputy Lopez pulled him over.

¶3            While a passenger waited in the rental car, Paul gave Deputy Lopez a Georgia driver's license and, at the deputy's request, got out of the car to talk while the deputy ran his information.  Paul told the deputy that he was coming from the Los Angeles area, where he had been living for several months, and was going to Oklahoma to visit his sick grandmother and drive her back to Los Angeles.  The deputy observed that Paul was "overly nervous" to the point that an artery in his neck was "pulsating rapidly," and Paul seemed to have to think about his answers to relatively simple questions.

¶4            The rental agreement stated that the car had been rented in San Francisco the day before and was due to be returned in Georgia the next day.  When Deputy Lopez asked Paul about the discrepancies between his

statements and the rental agreement, Paul became more nervous and he began to stutter. He mentioned the possibility of extending the rental agreement and said something about his aunt, but then immediately denied mentioning his aunt.

¶5         Deputy Lopez then spoke briefly with the passenger, who said she and Paul were driving home to Georgia, and were just stopping on the way to visit Paul's grandmother in Oklahoma. The deputy told Paul he could give him a warning for traffic infractions (but did not in fact issue a warning), then asked whether there was anything illegal in the car, which Paul denied. But when the deputy explained that he was part of a narcotics task force looking for drug smugglers, Paul became even more nervous and began to shake visibly.

¶6         Deputy Lopez then asked Paul for consent to search the car, and Paul refused. By this time, approximately 8 to 10 minutes into the stop, another deputy had arrived, and Deputy Lopez got his drug-detection dog from his car. The dog quickly alerted on the trunk, which held a duffle bag and a trash bag containing packages of marijuana. Paul was then arrested. Approximately 15 minutes had passed since Deputy Lopez pulled him over.

¶7         The State charged Paul with transportation of marijuana for sale and possession of drug paraphernalia.[1] Alleging a Fourth Amendment violation, Paul moved to suppress the evidence discovered during the traffic stop, arguing that the deputy lacked reasonable suspicion to justify the stop or to justify prolonging the stop to conduct the canine search. The superior court conducted an evidentiary hearing on the motion at which Deputy Lopez testified and described the facts surrounding the stop. Deputy Lopez also testified that a traffic stop (without further investigation) would generally last between 5 and 10 minutes, that I-40 is a known drug corridor, that drugs generally move east and north (and money in the opposite direction) in this part of the country, and that San Francisco is a known source city (particularly for marijuana) and Georgia a known destination for drug shipments.

¶8         The superior court denied the motion to suppress, finding that the deputy had reasonable suspicion of traffic violations to justify the stop and reasonable suspicion of criminal activity to justify extending the

---

[1]      The indictment also alleged first degree failure to appear, but the court later granted Paul's motion for a judgment of acquittal as to that charge.

stop for a canine search, and alternatively that the extension of the stop was *de minimis*. Paul was convicted of the drug offenses after a jury trial, and the court sentenced him as a repetitive offender to concurrent terms of imprisonment, the longest of which is 14 years.

¶9          Paul timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.[2]

## DISCUSSION

¶10          We review the denial of a suppression motion for an abuse of discretion, considering only the evidence presented at the suppression hearing and deferring to the superior court's factual findings and credibility assessments. *State v. Sweeney*, 224 Ariz. 107, 111, ¶ 12 (App. 2010); *see also State v. Salcido*, 238 Ariz. 461, 463, ¶ 2 (App. 2015). We review de novo the court's ultimate legal conclusion as to constitutionality of the seizure and search. *Sweeney*, 224 Ariz. at 111, ¶ 12.

¶11          Paul first argues that the deputy lacked reasonable suspicion of a traffic violation as required to justify the traffic stop. An officer may make a limited investigatory stop of a vehicle based on an "articulable, reasonable suspicion" of criminal activity, including commission of a traffic violation. *Salcido*, 238 Ariz. at 464, ¶ 7; *see also* A.R.S. § 28-1594; *State v. Teagle*, 217 Ariz. 17, 23, ¶ 20 (App. 2007).

¶12          Under A.R.S. § 28-730(A), "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent and shall have due regard for the speed of the vehicles on, the traffic on and the condition of the highway." Here, Deputy Lopez testified that Paul was following one car length behind the truck for several hundred yards. Deputy Lopez explained that this was an unsafe distance at highway speeds because it would be difficult for Paul to stop in time if the truck slowed, and because it reduced Paul's ability to see around the truck to the traffic ahead.

¶13          Paul argues that the deputy's testimony did not establish a traffic violation because he did not describe other traffic or driving conditions, or provide a specific calculation of the gap time between the truck and Paul's car. *See Sweeney*, 224 Ariz. at 116, ¶ 38 (Brown, J., specially concurring) (reasonable suspicion based on defendant following 0.88 seconds behind another vehicle at 70 mph after a snowfall, in conjunction

_____

[2]          Absent material revisions after the relevant date, we cite a statute's current version.

with testimony that a minimum safe distance required a 2-second gap). But the deputy observed the distance between Paul's car and the truck ahead and described how the one-car-length distance was unsafe—that is, not "reasonable and prudent"—under the circumstances. And the court expressly found Deputy Lopez to be credible, an assessment to which we defer. *See Teagle*, 217 Ariz. at 22, ¶ 19.

**¶14**      Accordingly, the record reflects that the deputy had reasonable suspicion that Paul had violated § 28-730, and the superior court did not abuse its discretion by denying Paul's motion to suppress on this basis. Because we resolve this issue based on § 28-730, we need not address other traffic violations alleged by the State.

**¶15**      Paul next argues that Deputy Lopez impermissibly extended the duration of the traffic stop to conduct the canine search. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). After an officer completes the traffic-related purpose of the stop, the driver must be allowed to leave unless (1) the encounter becomes consensual or (2) "during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot." *Sweeney*, 224 Ariz. at 112, ¶ 17 (citing *Teagle*, 217 Ariz. at 23, ¶ 22). Although Arizona previously recognized a rule that a *de minimis* extension of a traffic stop was not unreasonable under the Fourth Amendment, *see State v. Box*, 205 Ariz. 492, 499, ¶ 24 (App. 2003), the United States Supreme Court has clarified that any extended detention—even if *de minimis*—beyond the duration required to complete the traffic-related purpose of the stop is unconstitutional unless independently supported by reasonable suspicion. *Rodriguez v. United States*, 135 S. Ct. 1609, 1615–16 (2015).

**¶16**      Reasonable suspicion requires an objective, articulable basis justifying investigatory detention. *Sweeney*, 224 Ariz. at 112, ¶ 21; *Teagle*, 217 Ariz. at 23, ¶ 25. It requires something less than probable cause, but more than an unparticularized hunch. *Id.* Existence of reasonable suspicion is assessed in light of the totality of the circumstances, taking into account the officer's training and experience, and considering collectively all criteria, even those that in isolation might have innocent explanations. *Sweeney*, 224 Ariz. at 112–13, ¶ 22; *State v. Fornof*, 218 Ariz. 74, 76, ¶ 6 (App. 2008). To establish reasonable suspicion in a case such as this, the combination of factors must serve to "distinguish between suspect and innocent behaviors" and eliminate a "substantial portion of innocent travelers," so as not to "cast too wide a net and subject all travelers to 'virtually random seizures.'" *See Sweeney*, 224 Ariz. at 113, ¶ 22 (quoting

*Teagle*, 217 Ariz. at 24, ¶ 25, and *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam)).

¶17　　　　Here, the short period of detention required to conduct the canine search was supported by reasonable suspicion of drug trafficking. Several discrepancies between Paul's explanation of his trip, the passenger's account, and the rental agreement, suggested deception. *See United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir. 1996), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (en banc); *State v. Sheko*, 146 Ariz. 140, 142 (App. 1985). Paul claimed to be coming from Los Angeles, but the rental agreement noted the car had been picked up in San Francisco. Paul claimed that he was going to pick up his sick grandmother in Oklahoma "and give her a ride back to Los Angeles," but the rental agreement stated the car was due to be returned in Georgia the next day. Consistent with the rental agreement (and inconsistent with Paul's statement of his destination), the passenger stated they were just visiting Paul's grandmother in Oklahoma on their way to Georgia. And while the passenger said they were heading "home" to Georgia, Paul had claimed to be living in Los Angeles.

¶18　　　　These inconsistencies—as well as the deputy's observation that Paul seemed to have to think about his answers to straightforward questions—provided an objective basis to suspect deception. Although Paul argues this questioning occurred after the deputy had completed the traffic-related purpose of the stop, the deputy's testimony was clear that he reviewed the rental agreement and spoke with Paul and the passenger even before indicating that the traffic violations could result in a warning. And while Paul suggests an innocent explanation to resolve some of the inconsistencies—e.g., that, consistent with the passenger's statement, they were planning to visit the grandmother on the way to Georgia and only might, consistent with his statement, take the grandmother to Los Angeles before continuing to Georgia—the court could reasonably draw a different conclusion. *See State v. O'Meara*, 198 Ariz. 294, 296, ¶ 10 (2000).

¶19　　　　Accordingly, the superior court did not abuse its discretion by denying Paul's motion to suppress. Because we resolve the case based on reasonable suspicion, we need not consider the parties' alternative arguments regarding the good faith exception.

**CONCLUSION**

¶20 Paul's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA