Richard D. WALLS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A04–9810–CR–520.

Court of Appeals of Indiana.

Aug. 20, 1999.

Rehearing Denied Oct. 25, 1999.

Michelle F. Kraus, Deputy Public Defender, Fort Wayne, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RUCKER, Judge

When the passenger of a car that has been stopped by a police officer exits the car and begins to walk away, may the officer as a matter of course order the passenger to return to the vehicle? We hold that he may not.

The essential facts are these. Shortly after midnight on December 25, 1997, Appellant–Defendant Richard D. Walls was a passenger in a car driven by another person. When the driver made a left-hand turn without using his turn signal, patrol officer Gregory Stier activated his emergency lights and pulled the car over. The location at which the car was stopped was known to be a high drug-trafficking area. As Officer Stier

reached for his police radio to give his location and to run a license plate check, Walls "jumped out of the passenger side of the vehicle and shut the door and started to walk away." R. at 95. The officer ordered Walls to return, and after hesitating momentarily Walls complied. Officer Stier then approached Walls and asked if he had any weapons. Walls responded that he had a knife in his pocket. The officer then conducted a pat-down search recovering two knives in the process. On the blade of one of the knives was a white chalky substance later identified as crack cocaine. Walls was arrested and later charged with possession of cocaine as a Class D felony.[1] Prior to trial he filed a motion to suppress the evidence which the trial court denied. During trial the cocaine was introduced into evidence over Walls' objection. Walls was convicted as charged. This appeal followed.

Walls contends the trial court erred in denying his motion to suppress and entering the contraband into evidence over his objection. According to Walls he was unlawfully detained and thus the search and ultimate seizure were constitutionally infirm.

 We first observe that the admissibility of evidence is within the sound discretion of the trial court, and we will not disturb that decision absent a showing of manifest abuse of that discretion resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct.App.1997). In reviewing the admissibility of evidence, this court will consider only the evidence favoring the trial court's ruling and unrefuted evidence in the defendant's favor. *Taylor v. State*, 677 N.E.2d 56, 65 (Ind.Ct.App.1997), *trans. denied.*

In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Supreme Court held that a police officer may order the driver of a lawfully stopped car to exit the car as a precautionary measure for the officer's safety. *Mimms*, 434 U.S. at 109–11, 98 S.Ct. at 323–33. More recently the Court held that the *Mimms* rule applies

to passengers as well as drivers. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Thus, when making a traffic stop, a police officer may now order passengers to get out of the car pending completion of the stop. *Wilson*, 519 U.S. at 415, 117 S.Ct. at 886. The question in the case before us is whether the *Mimms/Wilson* holding extends to a passenger who walks away from a car.[2]

In both *Wilson* and *Mimms* the underpinning of the Court's conclusion was that once a car was lawfully stopped by police, the additional intrusion on the liberty of the driver or passenger in ordering either of them to exit the car, is *de minimis* and is outweighed by considerations of the officer's safety. *Wilson*, 519 U.S. at 412, 117 S.Ct. at 885; *Mimms*, 434 U.S. at 111, 98 S.Ct. at 334. Stated differently, the *Mimms/Wilson* analysis seems to contemplate an order to exit along with some indication that the officer's safety may be compromised. Where, for example, a police officer orders a driver or passenger to exit a car and, during the course of the traffic stop, the driver or passenger attempts to flee the scene, makes a furtive movement, or somehow threatens the officer's safety, then the officer may have an articulable suspicion of criminal activity justifying detention of either the driver or the passenger, or both. However, we are faced with no such facts here. Rather, in the case before us Walls exited the car of his own volition and was walking away from the scene at the time Officer Stier commanded Walls to return. Nothing in the record indicates that Walls threatened the officer in any way. Indeed Officer Stier testified that once Walls exited the car he recognized Walls from previous encounters. According to Officer Stier, he did not know Walls to be a violent person, and he did not know Walls to be a person who carried a weapon. R. at 128. Rather, Officer Stier testified that he was simply suspicious of Walls walking away from the scene. When questioned why that was so, the officer testified "I guess I don't

---

1. Ind.Code § 35–48–4–6.

2. A similar question was raised in *Wilson*, namely: whether "an officer may forcibly detain a passenger for the entire duration of the stop."

However, the Court declined to express an opinion on the issue. *Wilson*, 519 U.S. at 415 n. 3, 117 S.Ct. at 886 n. 3.

understand the thought pattern that someone would just get out and walk away when they are being stopped by the police." R. at 100. Officer Stier also testified that by leaving the scene, Walls placed him in a "tactical disadvantage." R. at 98.

■■■ In judging the reasonableness of investigatory stops, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *Mimms,* 434 U.S. at 109, 98 S.Ct. at 332. When balancing these competing interests in different factual contexts, our central concern is that "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). Consequently, "in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Stalling v. State,* 713 N.E.2d 922, 924 (Ind.Ct.App. 1999) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) (reversing trial court's denial of a motion to suppress evidence of cocaine seized through a warrantless patdown search for weapons where defendant rode away on his bicycle upon seeing police)).

■■■ In *Terry,* the Supreme Court established the rule that a police officer can, without a warrant or probable cause, briefly detain a person for investigatory purposes if, based on specific and articulable facts together with rational inferences from those facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884. Indiana courts follow the *Terry* guidelines. *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994); *Platt v. State,* 589 N.E.2d 222, 225–26 (Ind. 1992). Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. *Id.* at 226. Here, there were no specific or articulable facts before Officer Stier justifying a reasonable suspicion that Walls had been engaging or was about to engage in criminal activity.

**3.** In *People v. Gonzalez,* 184 Ill.2d 402, 235 Ill. Dec. 26, 704 N.E.2d 375, 382 (1998) a case factually similar to the one before us, the Illinois Supreme Court reached a contrary conclusion

Indeed Officer Stier's suspicions had nothing to do with criminal activity being afoot. Rather, he simply questioned why a person who was merely a passenger in a car would walk away from the scene after the car was stopped by police. That is not enough. True, the record shows that the location at which the car was stopped and from which Walls was leaving was known as a drugtrafficking area. However, the fact that one turns away from the police in a high crime neighborhood is not sufficient to establish reasonable suspicion of criminal activity. *Tumblin v. State,* 664 N.E.2d 783, 785 (Ind. Ct.App.1996).

Further, we reject the notion that for purposes of taking "command of the situation" or maintaining a "tactical advantage" a police officer may routinely order the passenger of a car to remain at the scene of a traffic stop.[3] In our view such an intrusion upon the liberty of a private citizen who has been observed engaging in no illegal activity, and whose only transgression is his untimely presence in a car that has been stopped for a minor traffic violation, is not *de minimis.* The Fourth Amendment is satisfied only if the facts known to the officer at the moment of the stop are such that a person "of reasonable caution" would believe that the "action taken was appropriate". *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880; *Gipson v. State,* 459 N.E.2d 366, 368 (Ind.1984). In this case, Officer Stier's own testimony shows that when the officer ordered Walls to return to the scene, he had no reason to believe that Walls posed a threat or danger to him of any kind. Essentially, Officer Stier lacked the reasonable articulable suspicion necessary to justify an investigatory stop. Absent reasonable articulable suspicion, the Officer's subsequent search of Walls and resultant seizure of the cocaine were unreasonable and exceeded constitutional limits. Therefore the trial court erred in denying Walls' motion to suppress.

Judgment reversed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

and held that the *Mimms/Wilson* rationale authorizes police officers to order a passenger to remain at the scene of a traffic stop.

SULLIVAN, Judge, dissenting

The majority opinion confines its analysis to a single issue, i.e. whether an officer who makes a valid traffic stop not only may order a passenger, as well as the driver, to exit the vehicle but also may direct the passenger, who begins to walk away, to return to the vicinity of the vehicle. The majority does not consider whether the officer, for protective purposes, was entitled to conduct a pat-down of the passenger, which resulted in seizure of the knife, which in turn contained smears of cocaine; nor do I.

At the outset, I would note that the officer here did not order the occupants to exit the vehicle. Instead, while the officer was contacting the radio dispatcher and checking the license plate, Walls "jumped out of the passenger side of the vehicle and shut the door and started to walk away." Record at 95. The officer believed that he was being placed at a "tactical disadvantage" and that his "safety" as well as the integrity of his investigation were being compromised, because allowing either party to leave the scene would have risked losing sight of a possible source of danger. Record at 97–98. Therefore, he ordered Walls to return to the car. The officer's belief was not unreasonable given the fact that "this was . . . a situation involving a lone police officer in a high crime area." *See Banks v. State* (1997) Ind.App., 681 N.E.2d 235, 239.

The long established rationale underlying the decision in *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331, as quoted by the majority here, appropriately focused upon the balance between safeguarding the officer from unnecessary risks during a routine traffic stop and the minimal intrusion upon a motorist who has already been validly detained for the traffic violation. In *Maryland v. Wilson* (1997) 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41, the same rationale was used to validate ordering a passenger out of the vehicle.

Prior to *Maryland v. Wilson, supra,* other jurisdictions had extended the holding of *Mimms* to passengers. In *State v. Smith* (1994), 134 N.J. 599, 637 A.2d 158, the court noted that several New Jersey Appellate Court decisions had already extended the *Mimms* rationale to passengers and approved those holdings by validating a police order to a passenger to exit the car and holding a subsequent pat-down to be reasonable. In doing so, the court cited numerous cases from other jurisdictions holding that because "a passenger presents as significant a danger to the safety of a police officer as a driver," the officer may order the passenger out of the car. *See Smith, supra,* 637 A.2d at 164–165. The court, however, noted that the intrusion upon a passenger's privacy is greater than upon that of a driver and upon that basis refused to apply a *per se* rule allowing passengers to be ordered out of vehicles in all traffic stops and under all circumstances. In my view, such caveat does not invalidate the action of the police officer here.

In another pre-*Wilson* case, *People v. Robinson* (1989), 74 N.Y.2d 773, 545 N.Y.S.2d 90, 543 N.E.2d 733, 734, *cert. denied,* 493 U.S. 966, 110 S.Ct. 411, 107 L.Ed.2d 376, the New York Court of Appeals presaged *Wilson* in holding that ordering passengers out of a car during a stop for a traffic violation was justified in that "the risks in these police/civilian vehicle encounters are the same whether the occupant is a driver or a passenger."

As noted by the majority here, however, the *Wilson* court expressly declined to address the question of whether once ordered from the vehicle a passenger may be detained for the entire duration of the stop.

Be that as it may, the *Wilson* court itself gave us an indication of a prospective ruling in that it found "guidance by analogy" from *Michigan v. Summers* (1981) 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340. *Wilson, supra,* 519 U.S. at 414, 117 S.Ct. at 886. In that case, the court upheld action by police who arrived to serve a search warrant and found Summers coming down the front steps of the residence. The decision held that the police could legitimately require Summers to re-enter the house and to remain while they conducted the search. In doing so, the court reasoned that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Summers, supra,* 452 U.S. at 702–03, 101 S.Ct. at 2594.

Somewhat more directly and to the point, the Virginia Court of Appeals in *Harris v. Commonwealth* (1998), 27 Va.App. 554, 500 S.E.2d 257, 261, held that not only may a passenger be ordered from the vehicle but also the passenger may be forced to remain at the scene "to protect [the officers'] safety and maintain the status quo during the course of the investigatory traffic stop."

In a case almost identical to that before us, *People v. Gonzalez* (1998), 184 Ill.2d 402, 235 Ill.Dec. 26, 704 N.E.2d 375, *petition for cert. filed* (U.S. Feb. 26, 1999) (No. 98–8359), cited here by the majority, a police officer at 2:40 a.m. in a high crime area made a legitimate traffic stop. The defendant, a passenger, exited the car and proceeded to leave the scene. The defendant ignored the officer's command to return to the vehicle until the officer summoned his accompanying K–9 dog. When so confronted, the defendant obeyed the officer's second demand to return to the vehicle. The officer asked the defendant if he was carrying any guns, needles or knives, a question to which defendant responded in the affirmative. The officer conducted a pat-down and discovered a gun in the front waist area of defendant's pants.

The Illinois Supreme Court held as follows:

> Thus, consistent with the rationale of *Mimms* and *Wilson*, we conclude in the cause at bar that, because the public interest in officer safety outweighs the potential intrusion to the passenger's liberty interests, it is reasonable for a police officer to immediately instruct a passenger to remain at the car, when that passenger, of his own volition, exits the lawfully stopped vehicle at the outset of the stop. We find that because the same risk of harm to officers discussed in *Mimms* and *Wilson* is present where a passenger unexpectedly exits a lawfully stopped vehicle, the officer's need to exercise " 'unquestioned command of the situation' " is likewise present. [internal citation omitted].

\* \* \* \* \*

Thus, our ruling today is in accordance with the trend of decisions that, based upon the rationale of *Mimms* and *Wilson*,

it is reasonable for a police officer to control the movements of individuals during a traffic stop. Because "[w]e cannot allow the officer's safety to depend on how fast the driver and passenger can get out of the vehicle after it has been stopped," we find that ordering occupants to remain at the lawfully stopped vehicle "does no more than establish the status quo at the time of the stop."

*Gonzalez, supra* at 382, 383 (quoting *State v. Webster* (1991), 170 Ariz. 372, 824 P.2d 768, 770, *review denied*).

I would hold the same in the case before us.

In light of my minority position with respect to the issue deemed dispositive by the majority, it would be an unproductive exercise for me to delineate my views concerning the validity *vel non* of the pat-down and discovery of the knife which contained cocaine.

Suffice it to say that I dissent with regard to the majority decision upon the sole issue considered.