**A Joseph TAWDUL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 17A03–9903–CR–110.**

Court of Appeals of Indiana.

Dec. 20, 1999.

Sarah L. Nagy, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

A jury convicted A Joseph Tawdul of resisting law enforcement,[1] as a Class A misdemeanor. Tawdul now appeals, raising three issues for our review, which we restate as follows:

I.  Whether the trial court erred in imposing an executed sentence of ten days imprisonment combined with one year of probation.

II. Whether it was reasonable for an officer to order Tawdul, a passenger in a lawfully stopped vehicle, to return to the vehicle that he immediately exited after the car was stopped.

III. Whether the trial court erred in allowing the State to cross-examine Tawdul about a prior traffic offense that he committed ten years earlier.

We affirm, but remand for sentencing.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that on the evening of February 14, 1999, Tawdul was a passenger in his friend's car. Officer James Sloan, driving in a marked patrol car, approached the car in the opposite lane and noticed that its bright lights were illuminated. He flashed the headlights of his patrol car at the oncoming car to signal the driver to switch to low beams. When the driver of the car failed to dim its headlights, Sloan turned his car around and began to follow the car. After following the car for approximately one mile and waiting for the car to exit a curve, Sloan activated his emergency lights.

The driver of the car initially failed to pull over in response to the emergency lights even though other cars did yield. Sloan followed the car for less than a mile before the driver pulled into an alley and then onto a private drive. Sloan exited his patrol car and observed both the driver and Tawdul exit the car in which they were riding. Sloan asked them both to remain in the car. Both individuals refused to return to the car despite Sloan's repeated requests to remain inside the car. Tawdul told Sloan that he was going to go inside to use the restroom. Sloan responded that if he did he would be arrested for resisting law enforcement. Tawdul proceeded toward the house and told Sloan to shoot him if he had to. Tawdul returned outside a few moments later and was arrested by other officers who had arrived in response to a dispatch by Sloan.

Tawdul was charged with resisting law enforcement. A jury found him guilty. The trial court sentenced him to 180 days imprisonment with 170 days suspended for a total executed sentence of ten days. The trial court also imposed a probation period of one year. Tawdul now appeals.

## DISCUSSION AND DECISION

### I. Sentence

■ Tawdul first argues that the trial court erred in imposing a 180 day sentence combined with one year of probation. He claims that this sentence exceeds the statutory maximum one year sentence for a misdemeanor. IC 35–50–3–2. Therefore, Tawdul requests us to remand the case to the trial court with instructions that "[t]he term of probation imposed should not exceed 185 days because [his] prison term was 180 days." *Appellant's Brief* at 5. The State concedes that the trial court erred, but argues that Tawdul can be placed on probation for up to 345 days. While we agree with Tawdul that the trial court erred, we disagree with his interpretation of the case law establishing the formulation for determining whether a sentence exceeds the maximum penalty authorized by statute.

---

1. *See* IC 35–44–3–3(a)(3).

In *Smith v. State*, 621 N.E.2d 325 (Ind. 1993), our supreme court held that "a combined term of probation and imprisonment exceeding one year is inconsistent with the maximum term for conviction for a misdemeanor." *Id.* at 326. The court found that the trial court erred by extending the defendant's sentence of one year imprisonment with 255 days suspended by imposing a one-year probation period. The court vacated the Court of Appeals' majority opinion and instead agreed with Judge Barteau's dissenting opinion: " '[t]he trial court has the option, in sentencing a class A misdemeanant, to suspend the sentence in whole or in part and to place the defendant on probation, so long as the combination of the *executed* sentence and the probationary period do not exceed the maximum statutory sentence for that offense.' " *Id.* (citing *Smith v. State*, 610 N.E.2d 265, 272 (Ind.Ct.App. 1993) (Barteau, J., dissenting)) (emphasis added).

In *Albright v. State*, 708 N.E.2d 15, 16 (Ind.Ct.App.1999), this court recently held that the trial court erred by placing Albright on probation for one full year for each of two misdemeanor convictions after suspending the executed portion of the sentence to time served. We further determined that Albright was entitled to good time credit for the time he spent incarcerated awaiting trial. *Id.*

Here, the trial court sentenced Tawdul to 180 days imprisonment with 170 days suspended for a total executed sentence of ten days. In addition, the court placed him on probation for one year. Because the sentence imposed a term of probation that caused Tawdul to serve more than one year of combined imprisonment and probation, the trial court erred. We therefore remand this case to the trial court for a determination of the probationary period not to exceed 345 days.

## II. Investigatory Stop of Passenger of Vehicle

■ Tawdul next alleges that his arrest was made in violation of the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution. He argues that the initial stop was unlawful because the officer could not articulate any reasonable suspicion that he was involved in any criminal activity. According to Tawdul, the failure of the driver to dim her headlights and to yield to an emergency vehicle cannot be imputed to the passenger. Because the driver was independently culpable, and the officer could articulate no facts that he was involved in any criminality, Tawdul asserts that he had no obligation to return to the car and to be detained by the officer.

In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court set forth the bright-line rule that law enforcement officers may, as a matter of course, order the driver to exit a lawfully stopped vehicle. Two decades later the Court in *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), extended this per se rule to apply to passengers of lawfully stopped vehicles. In both cases, the Court employed a balancing test to determine whether the police acted reasonably. *Mimms*, 434 U.S. at 109, 98 S.Ct. 330; *Wilson*, 519 U.S. at 413, 117 S.Ct. 882. The public interest in officer safety was weighed against the personal liberty interest that individuals have to be free from arbitrary government interference. *Mimms*, 434 U.S. at 109, 98 S.Ct. 330; *Wilson*, 519 U.S. at 413, 117 S.Ct. 882. The *Mimms* Court concluded that on the public interest side of the balance officer safety was a "legitimate and weighty" concern and that it would be unreasonable to require the police "to take unnecessary risks in the performance of their duties." *Mimms*, 434 U.S. at 110, 98 S.Ct. 330 (internal citation omitted). On the other side of the balance, the Court considered the additional intrusion of asking the driver to exit the vehicle to be "de minimis." *Id.* at 111, 98 S.Ct. 330. Determining that a request by the police for the driver to

exit a lawfully stopped vehicle was "at most a mere inconvenience," the Court concluded that the interest in officer safety outweighed an individual's privacy interest. *Id.*

This same balancing test was applied in *Wilson* where the court concluded:

"On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver."

*Wilson,* 519 U.S. at 413–14, 117 S.Ct. 882. The Court also noted that the risk of harm to the police is reduced when they "routinely exercise unquestioned command of the situation." *Id.* at 414, 117 S.Ct. 882 (internal citation omitted). Moreover, the dangers faced by the police in a traffic stop were likely greater when passengers were present in a stopped vehicle. *Id.* The Court ultimately held that even though "there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal" and thus the police could order passengers to exit the vehicle pending completion of the stop. *Id.* at 414–15, 117 S.Ct. 882.

Recently, in *Walls v. State,* 714 N.E.2d 1266 (Ind.Ct.App.1999), *reh'g denied,* a panel of this court held that when a passenger of a car that has been lawfully stopped exits the car and walks away, a police officer may not as a matter of routine practice order the passenger to return to the car. In *Walls,* a police officer observed a car make a left-hand turn without signaling. The officer activated his emergency lights and the driver yielded. Almost immediately, the officer saw the passenger, Walls, get out of the car and begin to walk away. The officer ordered Walls to return to the car. Walls complied. The officer then asked him if he had any weapons. Walls told the officer that he had a knife in his pocket. A pat-down search of Walls revealed two knives, one blade had a white chalky substance that later was determined to be crack cocaine. Walls was subsequently convicted of possession of cocaine.

On appeal, Walls argued that he was unlawfully detained and that the search and seizure were invalid. The majority in *Walls* began its analysis by noting that the United States Supreme Court in *Wilson* declined to resolve the issue of whether the police may "forcibly detain a passenger for the entire duration of the stop" when it adopted the rule that the police while conducting a lawful traffic stop can routinely order passengers out of the vehicle. *Id.* at 1267 n. 2 (quoting *Wilson,* 519 U.S. at 415 n. 3, 117 S.Ct. 882). The court wrote:

"In both *Wilson* and *Mimms* the underpinning of the Court's conclusion was that once a car was lawfully stopped by police, the additional intrusion on the liberty of the driver or passenger in ordering either of them to exit the car, is de minimis and is outweighed by considerations of the officer's safety. Stated differently, the *Mimms / Wilson* analysis seems to contemplate an order to exit along with some indication that the officer's safety may be compromised.

Where, for example, a police officer orders a driver or passenger to exit a car and, during the course of the traffic stop, the driver or passenger attempts to flee the scene, makes a furtive movement, or somehow threatens the officer's safety, then the officer may have an articulable suspicion of criminal activity justifying detention of either the driver or the passenger, or both."

*Id.* at 1267 (citations omitted). The court found that the officer in *Walls* lacked reasonable suspicion based upon specific or articulable facts that Walls had engaged in or was about to engage in criminal activity. *Id.* at 1268. The court also "reject[ed] the notion that for purposes of taking 'command of the situation' or maintaining a 'tactical advantage' a police officer may routinely order the passenger of a car to remain at the scene of a traffic stop." *Id.* The court stated that "such an intrusion upon the liberty of a private citizen who has been observed engaging in no illegal activity, and whose only transgression is his untimely presence in a car that has been stopped for a minor traffic violation, is not de minimis." *Id.* Accordingly, the majority held that the motion to suppress should have been granted.

In dissent, Judge Sullivan noted that the officer in *Walls* believed not only that he was being placed at a "tactical disadvantage," but also that both his safety and the integrity of the investigation were being compromised when Walls exited the vehicle. *Id.* at 1269. He reasoned that the *Mimms/Wilson* rationale allows the police to minimize the potential risk of harm to themselves by maintaining control of the scene during a lawful traffic stop. We agree with Judge Sullivan's analysis.

Judge Sullivan cited with approval the Illinois Supreme Court's holding in *People v. Gonzalez,* 184 Ill.2d 402, 235 Ill.Dec. 26, 704 N.E.2d 375 (1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 75, —— L.Ed.2d —— (1999). The facts in *Gonzalez* were virtually identical to those in *Walls.* After a police officer stopped a car for exceeding the speed limit, the passenger, Gonzalez, immediately exited the vehicle. The officer ordered Gonzalez to return to the car, and when he eventually complied, the officer asked him if he was carrying any guns, needles or knives. Gonzalez responded affirmatively, and a subsequent pat-down revealed a gun in the waist of his pants. According to the Illinois Supreme Court:

"It is clear under the rationale of *Mimms* and *Wilson* that the movements of occupants of a vehicle which is legitimately stopped may be subject to control by the police officer conducting the stop, even though the officer has no suspicion that the individuals have been involved in criminal behavior. This rule is dictated by the public's strong interest in officer safety during potentially dangerous traffic stops when balanced against the minimal intrusion on privacy interests of the driver and passengers. Thus, consistent with the rationale of *Mimms* and *Wilson,* we conclude in the cause at bar, that, because the public interest in officer safety outweighs the potential intrusion to the passenger's liberty interests, it is reasonable for a police officer to immediately instruct a passenger to remain at the car, when that passenger, of his own volition, exits the lawfully stopped vehicle at the outset of the stop. We find that because the same risk of harm to officers discussed in *Mimms* and *Wilson* is present where a passenger unexpectedly exits a lawfully stopped vehicle, the officer's need to exercise 'unquestioned command of the situation' is likewise present."

*Id.* at 382–83 (internal citations omitted). The court concluded that its holding was consistent with the trend of decisions in other jurisdictions that following the rationale of *Mimms* and *Wilson* had held that it was reasonable for the police to order a passenger to return to the vehicle. *Id.* at 383.

■ Following the logic and rationale of *Wilson,* we too hold that the police have a limited right to briefly detain a passen-

ger who exits the vehicle after it has been lawfully stopped. As an exercise of this authority, the police may order a passenger who has exited a lawfully stopped vehicle to return to the vehicle. This limited authority extends only long enough for the police to make an initial assessment of the situation. The brief detention does not necessarily encompass detaining the individual for the entire length of the traffic stop. The police may detain the passenger in order to ascertain the situation and to alleviate any concerns the officer has for his or her safety. If probable cause or reasonable suspicion develop during this short period of time, then the officer may be justified in detaining the individual longer in order to further investigate.

We further reject Tawdul's argument that the initial stop was unlawful because the driver's failure to dim her headlights and to yield to an emergency vehicle cannot be imputed to the passenger. The stop of the vehicle was lawful based upon the traffic violations witnessed by Sloan. Once an officer effects a lawful traffic stop, the passenger of that vehicle is also validly stopped. *See id.* at 382. It would be inconsistent to allow the police to order a passenger to exit a vehicle, but not to grant the police the limited authority to order the same person back to the car in order to safeguard officer safety and allow the police to conduct an initial assessment. *See id.* at 379 (quoting *People v. Gonzalez*, 294 Ill.App.3d 205, 228 Ill.Dec. 766, 689 N.E.2d 1187 (1998)). Moreover, simply because the driver may have been independently culpable for the traffic offenses, does not entitle the passenger to simply exit the vehicle and walk away. Although under no suspicion of culpability, the passenger is still subject to the limited authority of the officer.

We therefore conclude that Tawdul had the obligation to comply with the officer's request to return to the car for purposes of ensuring officer safety and allowing the officer to make an assessment of the situation. Because Tawdul failed to comply

with this request, his arrest for resisting law enforcement is valid.

### III. Prior Offense Cross–Examination

Finally, Tawdul claims that the trial court erred by allowing the State to cross-examine him about a traffic offense that occurred ten years prior to the trial. Specifically, he claims that the court erred in overruling an objection by his trial counsel to exclude evidence of the prior offense. He contends that allowing this evidence to be introduced was impermissible because it amounted to "prior bad act" evidence in violation of Indiana Rule of Evidence 404(b). We disagree.

A trial court is given broad discretion in ruling on the admissibility of evidence. *Link v. State*, 648 N.E.2d 709, 712 (Ind.Ct.App.1995). Absent an abuse of that discretion, a trial court's decision will not be reversed on appeal. *Id.* The conduct and scope of cross-examination is left largely to the court's discretion. *Norton v. State*, 273 Ind. 635, 408 N.E.2d 514, 523 (1980).

The scope of cross-examination is "limited to the subject matter of the direct exam and matters affecting the credibility of the witness." Ind. Evidence Rule 611(b). The scope of cross-examination includes "all matters reasonably related to the issues put in dispute by the direct examination, and all inferences and implications arising from the testimony on direct examination." *Reeves v. Boyd & Sons, Inc.*, 654 N.E.2d 864, 871 (Ind.Ct. App.1995), *trans. denied* (1996) (citing 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 611.201 at 197 (1995)). Any matter that tends to elucidate, modify, explain, contradict, or rebut direct testimony is permissible during cross-examination. *Id.* (citing *Hicks v. State*, 510 N.E.2d 676, 679 (Ind.1987)). Generally, when a defendant injects an issue into the trial, he opens the door to otherwise inadmissible evidence. *Kelley v. State*, 555 N.E.2d 1341, 1345 (Ind.Ct.App.1990). When a party touches upon a subject in direct examination,

" 'leaving the trier of fact with a false or misleading impression of the facts related, the direct examiner may be held to have 'opened the door' to the cross examiner to explore the subject fully, even if the matter so brought out on cross examination would otherwise have been inadmissible.' " *Reeves*, 654 N.E.2d at 871 (quoting 13 INDIANA PRACTICE § 611.204 at 201).

In the present case, the State did not introduce evidence of Tawdul's prior offense. Instead, Tawdul's own counsel elicited this evidence. The State was simply attempting to clarify for the jury Tawdul's direct examination testimony. On direct examination of Tawdul, the following colloquy occurred:

"Q. You have any prior felony or misdemeanor convictions?

A. No. No. (Pause) Excuse me. I take that back. Mr., Mr. Shively, uh, did, ten years ago we had a, it was a, it was a[sic] obstruction of traffic. It was in Angola. I had my kids in the truck. And I was ---

Q. Was that an infraction?

A. Yeah. I don't know what it was. It was something like that.

Q. Wasn't a misdemeanor or felony conviction?

A. It's been a long time.

Q. After you were arrested, were you taken downtown to Auburn?

A. Yeah.

Q. Where'd they take you? Okay. Did they test you for any use of alcohol?

A. Yeah.

Q. You didn't get arrested for any of that, did ya?

A. No.

Q. You hadn't been drinking?

A. No. They told me if I didn't take the test I'd be kept there eighteen hours."

*Record* at 346–47. Immediately following this questioning, the prosecutor began his cross-examination:

"Q. First of all, since you brought it up, let's talk about that incident in Angola ten years ago.

A. I didn't bring it up.

[DEFENSE ATTORNEY]: I'm gonna object to the relevance, Your Honor, of any incident in Angola ten years ago.

THE COURT: Overruled. You may an [sic], you may ask.

Q. Okay. As I recall the facts of that case, you were stopped at a stop sign on North Wayne Street, on a side street going on North Wayne Street in Angola. Is that right?

A. It's ten years ago. I don't remember.

Q. Okay. Now you don't remember. And you testified that you've never done anything violent in your life?

[DEFENSE ATTORNEY]: I don't think he ---

[PROSECUTOR]: I'm sorry.

[DEFENSE ATTORNEY]: I don't think that was his testimony.

Q. I'm sorry. I wanta get the words right. You testified you're not a violent person.

A. No; I'm not.

Q. Do you mean not anymore?

A. I wasn't before.

Q. Okay. You don't remember ten years ago?

A. It's, it's sketchy. I could probably go dig some records up. I wasn't violence [sic]."

*Record* at 347–48.

Here, Tawdul in his direct examination "opened the door" for the State to explore and seek to clarify his testimony with respect to his prior traffic offense. Tawdul's responses to his attorney's questions lacked clarity and could have left a misleading impression with the jury. Tawdul cites no authority, and we are not aware of

any authority, that would permit a defendant to "open the door" and then to close it as his convenience. *See Thornton v. State,* 653 N.E.2d 493, 499–500 (Ind.Ct. App.1995). We agree with the State that it was entitled to seek to clarify the evidence elicited from Tawdul by his trial attorney. Tawdul's claim that he was "unduly prejudiced by the admission of the prior bad acts," is disingenuous and unfounded given the fact that he opened the door to specific questions on cross-examination about the previous episode. *Appellant's Brief* at 11.

On appeal, the appellant bears the burden of establishing that there was error prejudicial to his substantive rights. *Gray v. State,* 579 N.E.2d 605, 608 (Ind. 1991). Even were we to hold that the trial court erred, there has been no showing of how Tawdul was harmed by the State's brief questioning on cross-examination. Accordingly, we hold that the trial court did not err in allowing the State to question Tawdul further about the prior offense.

Conviction affirmed; remanded for sentencing.

SHARPNACK, C.J., and RILEY, J., concur.