FILED

Aug 23 2023, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Brooks B. C. Ledger
Ledger Law, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Tyler Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kyle Budimir,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 23, 2023

Court of Appeals Case No.
23A-CR-17

Interlocutory Appeal from the
White Superior Court

The Honorable Brad A. Woolley,
Judge

Trial Court Cause No.
91D01-2107-F6-157

**Opinion by Judge Bradford**
Judges Riley and Weissmann concur.

**Bradford, Judge.**

# Case Summary

[1] Kyle Budimir was riding in a vehicle driven by Bianca Roberts when Monon Town Marshal Roger Young executed a traffic stop. Marshal Young requested an officer with a K9. Shortly before Sergeant Joshua Shoemaker of the White County Sheriff's Department arrived, Marshal Young had given Budimir permission to leave, but Budimir had not left by the time Sergeant Shoemaker arrived. As Budimir attempted to leave, Sergeant Shoemaker instructed him to stay, searched Budimir's person, and found methamphetamine, drug paraphernalia, and marijuana. The State charged Budimir with Level 6 felony possession of methamphetamine, Class A misdemeanor possession of paraphernalia with a prior conviction, and Class B misdemeanor possession of marijuana. Budimir moved to suppress the evidence recovered during the search of his person, arguing that the search had violated the Fourth Amendment to the U.S. Constitution and Article 1, section 11, of the Indiana Constitution. The trial court denied his motion and Budimir sought an interlocutory appeal. Budimir argues that the trial court erred in denying his motion to suppress. We agree and reverse.

## Facts and Procedural History

[2] On July 18, 2021, Marshal Young was on patrol when he spotted a vehicle being driven by Bianca Roberts, whose license he knew had been suspended. After confirming with dispatch that Roberts's license was still suspended, Marshal Young executed a traffic stop about two blocks from Roberts's

residence. He also requested that an officer with a drug-sniffing K9 come to the scene.

[3]     When Marshal Young approached Roberts's vehicle, he observed Budimir in the front seat and two children in the back seat. Budimir told Marshal Young that one of the children needed to use the restroom and Marshal Young agreed to let Budimir walk the children home. "Within seconds, a minute of the stop[,]" Sergeant Shoemaker arrived. Tr. Vol. II p. 13. When Sergeant Shoemaker arrived, Budimir was standing outside of Roberts's vehicle with one of the children, beside the driver-side front bumper. Marshal Young informed Sergeant Shoemaker that Budimir had been in Roberts's car but did not inform him that he had given Budimir permission to take the children home.

[4]     Sergeant Shoemaker began to approach Roberts's vehicle, and, at the same time, the other child walked over to Budimir. As Sergeant Shoemaker reached the driver-side door, Budimir and the two children began walking away from the traffic stop. Sergeant Shoemaker called to Budimir, "Hey, hold up man. Did he say you were allowed to go?" Ex. 1 at 00:08–00:15. Budimir turned to face Sergeant Shoemaker and Roberts told Sergeant Shoemaker that Marshal Young had given Budimir permission to take her children home. Sergeant Shoemaker then asked Budimir if he had come out of Roberts's car, and, after Budimir affirmed that he had been in the car, Sergeant Shoemaker replied, "Well, then you gotta stick around, buddy. Can you stand over there?" and motioned to a nearby driveway. Ex. 1 at 00:27–00:31.

[5] As the traffic stop proceeded, Sergeant Shoemaker walked his K9 around Roberts's vehicle, which resulted in a positive alert. As a result, Sergeant Shoemaker performed a warrantless search of Budimir's person, during which Sergeant Shoemaker discovered methamphetamine, marijuana, and drug paraphernalia. The State charged Budimir with Level 6 felony possession of methamphetamine, Class A misdemeanor possession of paraphernalia with a prior conviction, and Class B misdemeanor possession of marijuana.

[6] On September 2, 2022, Budimir moved to suppress the evidence that had been discovered on his person, arguing that the search and seizure were unlawful under the Fourth Amendment to the U.S. Constitution and Article 1, section 11, of the Indiana Constitution. On October 13, 2022, the trial court held a hearing on Budimir's motion. On December 13, 2022, the trial court entered its order denying Budimir's motion to suppress and granted his motion for interlocutory appeal. On January 4, 2023, we accepted jurisdiction of Budimir's interlocutory appeal.

## Discussion and Decision

[7] Our standard of review when considering the denial of a motion to suppress is well-settled:

> Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. We do not reweigh the evidence and we consider conflicting evidence most favorably to

> the trial court's ruling. However, this review is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant.

*Simmons v. State*, 781 N.E.2d 1151, 1153–54 (Ind. Ct. App. 2002) (internal citations omitted).

[8] "Because we only need to reach the federal constitutional analysis if the Indiana Constitution does not resolve the claim," we start with Budimir's Article 1, section 11, argument. *State v. Katz*, 179 N.E.3d 431, 442 (Ind. 2022). Article 1, section 11 of the Indiana Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure[.]" Despite Article 1, section 11's, similarity to the Fourth Amendment's language, Indiana courts interpret it "independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

[9] Our analysis under Article 1, section 11, focuses on the "the totality of the circumstances" in determining whether "the search or seizure was reasonable." *Sandleben v. State*, 29 N.E.3d 126, 134 (Ind. Ct. App. 2015), *trans. denied*. Three factors guide our review of the reasonableness of a search or seizure: "(1) the degree of concern, suspicion, or knowledge that a violation of law has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Id*. at 135. The State bears the burden of showing that the search or seizure was

reasonable under the circumstances. *Rutledge v. State,* 28 N.E.3d 281, 291 (Ind. Ct. App. 2015).

[10] The degree of concern, suspicion, or knowledge that Budimir had engaged in criminal activity was minimal, at best. Marshal Young had lawfully stopped Roberts for her driving with a suspended license; however, shortly thereafter, "he released [Budimir] from the scene[.]" Appellant's App. Vol. II p. 45. After being released, and shortly after Sergeant Shoemaker had arrived on scene, Budimir and the children began walking away before Sergeant Shoemaker "asked [Budimir] to stay by the scene." Appellant's App. Vol. II p. 46. Before Sergeant Shoemaker's K9 alerted on Roberts's car, there was no reason whatsoever to suspect that Budimir had engaged, or was engaging, in criminal activity of any kind.

[11] Moreover, the degree of intrusion was hardly "non-existent" as the State argues. Appellee's Br. p. 14. In *Cade v. State*, 872 N.E.2d 186, 188–89 (Ind. Ct. App. 2007), *trans. denied*, we concluded that the degree of intrusion was minimal when an officer executed a routine traffic stop and asked a passenger his name. *See also Cochran v. State*, 843 N.E.2d 980, 985 (Ind. Ct. App. 2006) (concluding that, where officer approached person standing on sidewalk, the officer's request for the person's name was minimal intrusion), *trans. denied*. Sergeant Shoemaker's command to Budimir was far more intrusive than merely asking for his name. When Sergeant Shoemaker told Budimir that he needs to "stick around" and stay in a nearby driveway, he restricted Budimir's ordinary

activities, namely, his freedom to leave the scene and take the children home. Ex. 1 at 00:27–00:31.

[12] Finally, the needs of law enforcement to detain Budimir were slight. The State correctly asserts that "police have a limited right to briefly detain a passenger who exits the vehicle after it has been lawfully stopped." *Tawdul v. State*, 720 N.E.2d 1211, 1216–17 (Ind. Ct. App. 1999), *trans. denied*. However, the situation in *Tawdul* is readily distinguishable from this one. In *Tawdul*, the driver and passenger had already exited the vehicle and had "refused to return to the car" despite the police officer's order to do so. *Id*. at 1213. We rejected Tawdul's argument that his arrest for resisting law enforcement violated the Fourth Amendment and Article 1, section 11, on the principle that "[t]he police may detain the passenger in order to ascertain the situation and to alleviate any concerns the officer has for his or her safety." *Id*. at 1217. Here, however, Marshal Young had already assessed the situation and had released Budimir from the scene by the time Sergeant Shoemaker arrived and ordered him to stay. The State points to nothing in the record to indicate that Sergeant Shoemaker observed anything about Budimir that Marshal Young did not that would have caused a reasonable concern for officer safety. In light of the nonexistent degree of suspicion that Budimir was engaging in criminal activity, the relatively intrusive nature of the encounter, and the minimal needs of law enforcement, we cannot say that the State met its burden in proving that the search and seizure of Budimir was reasonable under the totality of the

circumstances. As a result, we conclude that the trial court erred in denying Budimir's motion to suppress. *See Rutledge*, 28 N.E.3d at 291.

[13] The judgment of the trial court is reversed.

Riley, J., and Weissmann, J., concur.