NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KADE LARUE RICE, *Appellant*.

No. 1 CA-CR 22-0498
FILED 8-31-2023

Appeal from the Superior Court in Yuma County
No. S1400CR202001167
The Honorable Brandon S. Kinsey, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Kaitlin M. Amos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Anni Hill Foster joined.

---

**C A M P B E L L**, Judge:

¶1 Kade Larue Rice appeals her convictions and sentences for transportation of a dangerous drug (methamphetamine) for sale and possession of drug paraphernalia. Rice argues that the State introduced impermissible drug courier profile evidence. She also challenges the sufficiency of the evidence; the court's exclusion of information regarding her acquittal of related federal charges; and the fines, fees, and surcharges imposed as part of her sentences. Finding no reversible error, we affirm.

**BACKGROUND**

¶2 Three women in a rental car approached a border patrol checkpoint near Yuma on a Monday evening. Border Patrol Agents stopped the women, and a drug-sniffing dog was led around the vehicle. After the dog alerted, the women were diverted to a secondary inspection area to allow the agents to determine if there were drugs in the vehicle. Mary Sanchez was driving, Rice was in the passenger seat, and the third woman, Taylor Thomason, was in the backseat of the rental car. The agent asked Sanchez if she would consent to a search of the vehicle—she refused. The agent explained that based on the dog's alert, he had probable cause to search the vehicle. He directed the women out of the car and deployed the dog a second time.

¶3 The women watched as the dog again alerted on the passenger and rear compartments of the vehicle. Based on the dog's alert, the Border Patrol Agent began to search for the source of the odor. In the passenger compartment he recovered two paper bags containing marijuana. In the rear compartment, the agent found an array of luggage containing what was later confirmed to be 151 pounds of methamphetamine.

¶4 After discovering the drugs, the Border Patrol Agent detained the women, moving them to holding cells at the checkpoint. En route to the holding cell, Rice volunteered she had a medical marijuana card. A federal

special agent from the Drug Enforcement Administration (the DEA agent) then arrived to process the methamphetamine and interview the women.

¶5        Rice told the DEA agent that she and the other women left Oklahoma on Sunday, stopping at some point to acquire a rental car. Their original plan was to go sightseeing in Yuma. But once Rice realized how close they were to the state line, she insisted they press on so she could buy marijuana at a California dispensary. Once the women reached Calexico, California, they got a hotel room, but checked out mid-day after allegedly being harassed by an employee. According to Rice, they went to a restaurant for dinner, and then began driving home. When asked, Rice stated that no one had been alone with the rental car. She did not tell the DEA agent about Thomason's uncle, who arranged for the rental car in Oklahoma, met them at the restaurant in California, and later followed them to the checkpoint in his truck.

¶6        Rice was charged with transportation of a dangerous drug (methamphetamine), a class 2 felony, and possession of drug paraphernalia, a class 6 felony. A.R.S. §§ 13-3407(A)(7), (B)(7), -3415(A). Before trial, the State filed a motion in limine seeking to preclude, among other things, any evidence "of any federal investigation or subsequent acquittal" in a separate federal case in Oklahoma.[1] Rice did not file a response or otherwise object to preclusion of this evidence, and the superior court granted the State's motion.

¶7        The trial lasted three days and began with the parties stipulating that 151 pounds of methamphetamine had been seized from the vehicle. The State called the Border Patrol Agent and DEA agent to testify about the checkpoint stop and investigation. The DEA agent also provided expert testimony on typical behaviors of drug-trafficking organizations and couriers. The jury saw photographs of the rental car and its contents; and the bundles of methamphetamine divided up between the various pieces of luggage. The State also presented text messages retrieved from Rice's phone, showing she had driven somewhere alone while the women waited for their meals in a Calexico restaurant.

¶8        At the close of the State's case, Rice moved for a judgment of acquittal asserting there was insufficient evidence to prove that she had knowledge of the drugs found in the vehicle. *See* Ariz. R. Crim. P. 20. The court denied the motion, focusing in particular on the DEA agent's

---

[1]        Rice was charged and acquitted of conspiracy to distribute a controlled substance in the Western District of Oklahoma.

testimony that it would be highly unusual for someone to be in a car transporting 151 pounds of methamphetamine if they were not aware of the drugs or associated with a drug-trafficking organization.

¶9          In her defense, Rice presented a theory that the other women schemed with Thomason's uncle to transport methamphetamine across the country. They invited Rice along hoping to use her medical marijuana card as cover if they were stopped, without telling her the true nature of their trip. To that end, Rice's counsel pressed the DEA agent on whether the other women had inculpated Rice and whether the agent knew who had coordinated the drug run.

¶10          For her part, Rice testified that she had no idea they were transporting methamphetamine and thought she was simply on a "girls trip." Rice explained Thomason's uncle arranged the rental car because she could not get authorization to rent one herself. When the women had to drive two hours to an apartment complex to get the vehicle from an unfamiliar man, Rice "assume[d] the uncle was busy." She believed running into Thomason's uncle at the restaurant in California was a coincidence, even after discovering he was the same person who had arranged for their rental car. According to Rice, she left the restaurant alone in the rental car to get cash. While she was on this errand, she noticed the "back cargo area" was empty. When she returned to the restaurant, Rice left with Thomason in the uncle's silver truck. The two women went to a dispensary to purchase more marijuana with the cash Rice received. Once back at the restaurant, Rice's companions prevented her from walking around the back of the rental car so she could not see the newly acquired load. After explaining that Thomason's uncle was upset she had taken the rental car during dinner, the three women returned to the vehicle and headed back to Oklahoma. Rice testified that the uncle followed them in his truck, stopping briefly at the checkpoint to observe the search of the vehicle. Rice also recalled that Thomason told her not to "snitch" when they were at the checkpoint.

¶11          The jury found Rice guilty as charged. Based on her lack of criminal history and no evidence she received any monetary gain, the superior court sentenced Rice to a mitigated five-year term of imprisonment for transportation of a dangerous drug (methamphetamine), with a concurrent, presumptive one-year term for possession of drug paraphernalia. Rice timely appealed.

**DISCUSSION**

**¶12** Rice argues the court erred by (1) admitting (without objection) purported drug courier profile evidence; (2) denying her motion for judgment of acquittal; (3) precluding introduction of evidence of the separate federal case; and (4) assessing $267,064 in fees, fines, and assessments. We address each issue in turn.

## I. The State Did Not Present Drug Courier Profile Evidence

**¶13** Rice first argues the court erred by admitting drug courier profile evidence. Because Rice did not object below, "we will not reverse unless the court committed error that was both fundamental and prejudicial." *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶14** "A drug courier profile is a loose assortment of general, often contradictory, characteristics and behaviors" that are "typically displayed by persons trafficking in illegal drugs." *State v. Lee*, 191 Ariz. 542, 544, ¶ 10 (1998). Profile evidence may not be used as "substantive proof of guilt." *Id.* at 545, ¶¶ 11–12 (discussing permissible uses). On the other hand, modus operandi evidence, which "focuses on [a drug-trafficking organization's] usual patterns or methods," is admissible "to explain how a person's actions may indicate their active participation in a crime." *State v. Garcia-Quintana*, 234 Ariz. 267, 270–71, ¶ 13 (App. 2014).

**¶15** Here, the DEA agent testified that drug-trafficking organizations have many people playing different roles, and do not typically use unknowing couriers. The agent also testified that couriers (1) will travel with friends and carry bags "like they're going on vacation," (2) will use rental cars, and (3) are not "often willing to risk bringing . . . a bystander into their trip." This is quintessential modus operandi evidence. *See id.* at 271, ¶¶ 13–15 (distinguishing "generalized expert testimony about the patterns of a criminal organization" from opinion linking defendant's conduct to profile). Testimony about how couriers operate within drug-trafficking organizations was proper because it helped jurors understand the evidence and determine whether Rice knowingly transported the methamphetamine for sale. *See id.* at ¶ 13; Ariz. R. Evid. 702(a).

**¶16** Rice suggests that, even if "general information" about drug-trafficking organizations is admissible, testimony about "behaviors displayed by [Rice] and her friends" consistent with that information is inadmissible profile evidence. Citing *Lee*, she argues the State created a courier profile from "innocent and common behaviors." 191 Ariz. at 544, ¶ 14. However, *Lee* is distinguishable. In *Lee*, the State asserted that the

defendants' behavior—traveling with a hardshell suitcase, taking a late flight to Chicago, and checking in late for their flight—was proof they knew about the contraband they were transporting. *Id.* at 545, ¶ 13. The court disagreed and noted that the cited behaviors were largely benign. *See id.* at ¶ 14.

¶17        Here, the facts go beyond the benign premise of a girls' trip in a rental car. As Rice admitted at trial, the trip was not just the three women going on vacation. Thomason's uncle was heavily involved in the logistics, providing the rental car and later meeting them at a restaurant on the road. Nor is it common to pick up a rental car from a stranger in a residential parking lot. Most road trips do not involve a there-and-back, cross-country trip to go sightseeing in Yuma. The State did not infer that Rice had knowledge *because* she claimed to be on a girls' trip; the State's theory was that Rice's purported ignorance was controverted by the obvious "red flags" and inconsistencies in her version of events. *See State v. Gonzalez*, 229 Ariz. 550, 554, ¶ 15 (App. 2012) (approving use of modus operandi evidence as circumstantial evidence of knowledge).

¶18        The DEA agent could not (and did not) opine that Rice's behaviors fit that of a drug courier or that she must have known there was methamphetamine in the rental car. *See Escalante*, 245 Ariz. at 143, ¶ 25. The agent could, however, testify to her observations at the checkpoint, her interview with Rice, and the modus operandi of a drug-trafficking organization, permitting the jury to draw any reasonable inferences. *See Garcia-Quintana*, 234 Ariz. at 271, ¶ 14 ("[I]t is the province of the jury to determine whether a defendant's conduct fits within the modus operandi of a drug trafficking organization."); *see, e.g., Escalante*, 245 Ariz. at 143, ¶ 25 (noting jury could receive evidence that dryer sheets and coffee beans may be used to mask the smell of illegal drugs, and that those items were found in defendant's truck).

¶19        Therefore, Rice has not shown the court committed error, much less fundamental error, by admitting the Border Patrol Agent's testimony. *See Escalante*, 245 Ariz. at 142, ¶ 21 (requiring error that "went to the foundation of the case," "took from the defendant a right essential to h[er] defense," or "was so egregious that [s]he could not possibly have received a fair trial").

¶20        Even were we to assume that impermissible drug courier profile evidence was presented, Rice has failed to show she was prejudiced by the alleged error. *See id.* at 144, ¶¶ 29, 31. According to Rice's own testimony, she was in the front passenger seat of an SUV that held only the

women's personal belongings before the encounter with Thomason's uncle, and four large bags containing 151 pounds of methamphetamine thereafter. *Cf. id.* at 139, 143, ¶¶ 6, 26 (noting small plastic baggie containing one-tenth of a pound of methamphetamine was found "a few hours" later in the middle of the road, prompting several jury questions about ownership). The jury was "not compelled to accept [Rice's] story or believe h[er] testimony" that she did not know the cargo area was filled with methamphetamine. *See State v. Clemons*, 110 Ariz. 555, 556–57 (1974). Admitting the disputed evidence and related argument was not fundamental, prejudicial error.

## II. Denying Rice's Rule 20 Motion Was Not an Abuse of Discretion

**¶21** Rice next argues the court erred by denying her motion for judgment of acquittal under Arizona Rule of Criminal Procedure (Rule) 20. She contends the State failed to show she *knowingly* committed the charged offenses. Reviewing for an abuse of discretion, we will reverse "only if there is a complete absence of substantial evidence to support the charges." *State v. Tillmon*, 222 Ariz. 452, 456, ¶ 18 (App. 2009) (quotation and citation omitted); *see also* Ariz. R. Crim. P. 20. "Substantial evidence is evidence that a reasonable jury can accept as sufficient to support a conclusion of guilt beyond a reasonable doubt." *Tillmon*, 222 Ariz. at 456, ¶ 18.

### A. Evidence Supports the Transportation Charge

**¶22** We first consider whether evidence supports Rice's conviction for transportation of dangerous drugs. Under A.R.S. § 13-3407(A)(7), a person is guilty if she (1) knowingly transported dangerous drugs for sale, and (2) the substance was in fact a dangerous drug (i.e., methamphetamine). *See also* Revised Arizona Jury Instructions ("RAJI") Standard Criminal 34.0771 (6th ed. 2022). The State must prove, among other things, "actual physical possession or constructive possession with actual knowledge" that a dangerous drug is present. *See State v. Teagle*, 217 Ariz. 17, 27, ¶ 41 (App. 2007).

**¶23** "Constructive possession can be established by showing that the accused exercised dominion and control over the drug itself, or the location in which the substance was found." *Id.* The State needed to show Rice knew the SUV contained methamphetamine or that she was "aware of the high probability" of that fact and "acted with a conscious purpose to avoid learning the true contents" of the vehicle. *See State v. Fierro*, 220 Ariz. 337, 339, ¶¶ 5–9 (App. 2008).

¶24　　　　Rice was a passenger in a rental car with 151 pounds of methamphetamine contained in various pieces of luggage in the rear compartment. During the State's case, the jury heard testimony that drug-trafficking organizations typically do not use unknown couriers and disapprove of couriers bringing along innocent third parties. Rice also told the DEA agent it was *her* idea to go to California, suggesting she played an active role in the trip's logistics and was not "mere[ly] presen[t]." *See Teagle*, 217 Ariz. at 27, ¶ 41.

¶25　　　　Likewise, a jury could reasonably infer from Rice's text messages that she was in on the scheme. When Rice took the rental car to run an errand, Thomason told her to "hurry" because "[t]hey need the car." Rice acknowledged that she would "probably have to eat [her] food on the road." Thomason then gave specific instructions about where to park—next to a silver truck behind the restaurant—which Rice confirmed on her way back. Together, this circumstantial evidence supports the conclusion that Rice knew they needed to avoid detection in the parking lot for the transfer of the drugs and would be heading back to Oklahoma after dinner. All the circumstantial evidence supports the jury's verdict that Rice knowingly transported methamphetamine for sale. *See State v. Mosley*, 119 Ariz. 393, 402 (1978) (noting substantial evidence may be direct or circumstantial).

¶26　　　　Even so, Rice maintains that she "*actually believed* there were no illicit drugs in the vehicle." But the State need not negate every conceivable theory of innocence—even when circumstantial evidence alone supports the conviction. *State v. Blevins*, 128 Ariz. 64, 67 (App. 1981); *see also State v. Lee*, 189 Ariz. 590, 603 (1997) (noting appellate courts do not reweigh the evidence or resolve inferences in a defendant's favor). Moreover, Rice's testimony supplied additional facts to support her knowledge and constructive possession of the methamphetamine. *See State v. Nunez*, 167 Ariz. 272, 279 (1991) (noting a defendant "waives any error if h[e]r case supplies evidence missing in the state's case").

¶27　　　　Rice confirmed she had driven on the outbound trip and while in Calexico. While disputing the details, she agreed that she persuaded the other women to drive through the night to reach California. She also confirmed the silver truck mentioned in the text messages belonged to Thomason's uncle. The jury could reasonably conclude Rice exercised dominion and control over the rental car and knew the plan was to transport methamphetamine from Calexico to Tulsa. *See State v. Cox*, 214 Ariz. 518, 520, ¶ 9 (App. 2007) (noting constructive possession may be joint).

¶28 Rice also contends the evidence does not show she "knew the drug involved was methamphetamine." However, Rice stipulated that the substance found in the vehicle was methamphetamine. If Rice knew the trip was a drug run, the jury could reasonably conclude she was, at minimum, deliberately ignorant that the drug was methamphetamine. *See Fierro*, 220 Ariz. at 339–40, ¶¶ 5–10.

¶29 Lastly, Rice suggests the State failed to prove she "*knowingly* possessed the methamphetamine[] *with an intent to sell it*." But that is not what is required. The jury heard testimony that the methamphetamine's wholesale value was over $200,000, and the DEA agent testified that "151 pounds is not . . . for personal use." Based on the quantity of drugs and the length of the trip, the State provided ample evidence that the drugs seized from the rental car were being transported to Oklahoma where they would be sold to others. There was substantial evidence that Rice knowingly transported methamphetamine that was intended for later sale. *See State v. Harrison*, 111 Ariz. 509, 510 (1975) (holding that intent to sell could be inferred from "large quantity" of drugs).

### B. Evidence Supports the Paraphernalia Charge

¶30 Rice argues the State also provided no evidence to support the drug paraphernalia charge. *See* A.R.S. § 13-3415(A) ("[I]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to . . . pack, repack, store, contain, [or] conceal" drugs.). We disagree. The State's evidence included photographs of the bundled methamphetamine, packaged in foil and clear plastic bags, and stored in duffle bags. While Rice continues to argue that she lacked knowledge of the methamphetamine, once the jury determined that she knew of the drugs, the jury could infer that she knew of the drugs' packaging, which is drug paraphernalia. *See* A.R.S.
§ 13-3415(F)(2)(j).

¶31 We conclude the record contains sufficient evidence from which reasonable persons could find Rice knowingly transported methamphetamine for sale and knowingly possessed drug paraphernalia.

### III. Excluding Evidence of the Federal Case Was Not Fundamental, Prejudicial Error

¶32 Rice next contends the superior court committed reversible error by granting the State's pretrial motion to preclude evidence that Rice was acquitted of federal conspiracy charges in a trial in Oklahoma. We review for fundamental error because Rice did not object to the motion in

limine. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). She "must first prove error." *See id.* at 568, ¶ 23.

¶33 Rice argues that the "fact of acquittal" was "key to [her] theory of defense," which was that the others "act[ed] consciously to exclude [her] from their plan." She contends the prior acquittal "would have helped the jury to assess [her] testimony" that her companions prevented her from walking around the back of the rental car and discovering the newly acquired luggage, thereby bolstering her argument that she lacked any knowledge of the methamphetamine. She also suggests its preclusion "unduly limited trial counsel's ability to effectively cross-examin[e] law enforcement witnesses."

¶34 As support, Rice cites *State v. Ford*, 108 Ariz. 404, 409 (1972), for the proposition that "a trial court should exercise its discretion in favor of seeing that the accused is furnished with every fact necessary to prepare the best possible defense." But *Ford* does not compel the admission of all imaginable evidence favorable to a defendant. *See id.* (resolving discovery dispute). Rice is "still beholden to the trial court's application of ordinary evidentiary restrictions and rules." *State v. Gentry*, 247 Ariz. 381, 385, ¶ 15 (App. 2019).

¶35 "Any evidence of acquittal . . . must be admitted properly under Rules 401 and 403." *State v. Yonkman*, 233 Ariz. 369, 375, ¶ 21 (App. 2013). "Irrelevant evidence is not admissible." Ariz. R. Evid. 402. Evidence is relevant if it has any tendency to make a consequential fact more or less probable. Ariz. R. Evid. 401. But even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403.

¶36 Whether Rice conspired to acquire methamphetamine for distribution in Oklahoma turns on different facts than those necessary to prove she was knowingly transporting methamphetamine for sale in Arizona. We cannot say the court erred in precluding evidence of Rice's acquittal in the federal case. *See Yonkman*, 233 Ariz. at 375, ¶¶ 20–21 (noting prior acquittal may be excluded as irrelevant and confusing when other evidence has not created a risk of jury speculation). The evidence at trial was limited to the charged offense and did not encompass any separate investigation. The jury did not know about the federal case, and there was no speculation to dispel. *Cf. id.* at ¶ 21 ("[A]n acquittal instruction is appropriate when the testimony or evidence presented at trial . . . indicates that the jury has likely learned or concluded that the defendant was tried

for [a] prior act and may be speculating as to the defendant's guilt or innocence in that prior trial." (quotation and citation omitted)).

¶37        Even so, Rice has failed to show that, with evidence of the acquittal on the federal conspiracy charge, a reasonable jury could have acquitted her of transporting methamphetamine for sale or possession of drug paraphernalia. *See Escalante*, 245 Ariz. at 142, ¶ 21 (requiring "separate showing of prejudice"). Trial counsel's opening and closing statements make her defense theory clear: that Rice had no idea the girls' trip was a cover for drug trafficking. The jury implicitly rejected Rice's defense by finding her guilty. *See Clemons*, 110 Ariz. at 556–57 ("[T]he jury is not compelled to accept [a defendant's] story or believe h[er] testimony."). Given the evidence against Rice focusing on the events in California and Arizona, it is pure speculation to say that a reasonable jury could have reached a different result had it only known Rice had been acquitted of different charges in Oklahoma. Granting the State's motion in limine was not reversible error.

## IV.    The Fines Were Properly Imposed

¶38        Finally, Rice objects on various grounds to the fines, fees, and surcharges imposed. Because Rice did not object below, we review for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12.

### A.    Rice Was Not Prejudiced by Failure to Submit the Drugs' Value to Jury

¶39        Rice argues the superior court erred in imposing the maximum statutory fine without submitting the question of the methamphetamine's value to the jury. *See* A.R.S. §§ 13-3407(H) (imposing fine equal to the greater of $1,000 or "three times the value . . . of the dangerous drugs," subject to statutory limit), -801(A) (limiting criminal fines to $150,000). The State concedes this was fundamental error. *See State v. Angulo-Chavez*, 247 Ariz. 255, 259–60, ¶¶ 12–13 (App. 2019) (requiring a jury finding "[b]ecause the value of the dangerous drugs involved in the offense increases the mandatory minimum fine").

¶40        Even so, Rice must show she was prejudiced. *See id.* at 260, ¶ 15. "It is not enough to simply assert that the jury *could have* rejected the state's evidence," *id.* (emphasis added), or to raise the specter of jury nullification, as Rice does here. Rather, she must point to "evidence upon which a reasonable jury could have based a contrary decision." *Id.*; *see also Escalante*, 245 Ariz. at 144, ¶ 31 ("A reasonable jury is composed of persons of average intelligence and judgment who use common sense in

considering the evidence presented in connection with the instructions given by the court." (internal quotation and citation omitted)).

**¶41**        Rice has not met her burden because uncontroverted evidence shows that the seized methamphetamine was worth—at minimum—$200,000. At trial, the DEA agent estimated the methamphetamine was worth "over $200,000." Rice did not object. On appeal, she argues the drugs' value "was not 'uncontested,'" citing the Adult Probation Department's presentence report, which contained a different valuation. Tellingly, Rice does not include that value—it exceeds the DEA agent's valuation. Even so, the presentence report is not in the trial record, and jurors would not have been able to use it had they been asked to ascribe a value to the methamphetamine in this case. *See Angulo-Chavez*, 247 Ariz. at 260, ¶ 16 (finding no prejudice where "[n]either the court nor the jury was presented with evidence of a different valuation, and [the defendant] did not suggest or argue that a different value was appropriate"). Nonetheless, she asserts "the jury had ample grounds to question the astronomical estimate of value" because Rice and her friends were penniless "young ladies." But Rice conceded at trial that *151 pounds* of methamphetamine were seized from the rental car, and value is a function of quantity. Whether Rice could personally finance the transaction is of limited relevance.

**¶42**        Rice also suggests the Adult Probation Department "determined the appropriate fine to be $50." We disagree, as the presentence report recommended *fees* totaling $51 and is silent on the criminal fine and related surcharges. *See* A.R.S. §§ 12-116.01(A)–(C), 12-116.02, 16-954(A). Given that A.R.S. § 13-3407(H) is nondiscretionary, the court had to impose a fine consistent with the value of the drugs seized, subject to the statutory limit. *See* A.R.S. § 13-801(A).

**¶43**        Because Rice has failed to show a reasonable jury could have valued the methamphetamine at less than $200,000, much less at below $50,000,[2] she was not prejudiced by the court and not the jury determining the value of the drugs.

### B.        The "Additional Assessment" Is Permissible

**¶44**        Rice argues the superior court impermissibly imposed a $13 assessment on behalf of the United States Border Patrol. We disagree.

---

[2]        Rice is not entitled to a lesser fine unless the drugs were worth less than $50,000. *See* A.R.S. §§ 13-801(A), -3407(H) (trebling the drugs' value).

**¶45**        There is clear statutory authority for the assessment. *See* A.R.S. § 12-116.04(A) (authorizing $13 "addition[al]" assessment, collected "on every fine . . . for criminal offenses"). Rice contends the Border Patrol received $13, but her only support is the label given: "Additional Assessment (USBP)." We instead interpret "(USBP)" as designating which agency "investigated the offense." *See* A.R.S. § 12-116.04(D) (apportioning $4 to said agency).

**¶46**        Rice also speculates that "any such disbursement of funds *would trigger an examination* of whether such use" violates the Gift Clause of the Arizona Constitution. (Emphasis added.) *See* Ariz. Const. art. IX, § 7. She has waived this argument by not developing it on appeal. *See State v. Bolton*, 182 Ariz. 290, 298 (1995); *see also* Ariz. R. Crim. P. 31.10(a). Likewise, she waived her argument that the additional assessment "constitutes double dipping" because she did not raise it until her reply brief. *See State v. Lopez*, 217 Ariz. 433, 438, ¶ 17 n.4 (App. 2008) (noting that arguments not raised in opening brief generally are waived).

### C.        The Total Amount Is Not Excessive

**¶47**        Finally, Rice argues the total assessments imposed—$267,064 after fees and surcharges—is excessive. On this record, we conclude the total amount is statutorily permissible and is not unconstitutionally excessive.

**¶48**        She first contends the court erroneously ordered her to pay an amount above the statutory limit. *See* A.R.S. § 13-801(A) (capping all criminal fines at $150,000). But the $150,000 cap applies only to criminal fines, not to the additional fees and surcharges. *See* A.R.S. § 13-808(C); *see also State v. Wise*, 164 Ariz. 574, 577–78 (App. 1990) (holding legislature did not intend $150,000 to be "the absolute maximum that a convicted person could be compelled to pay"). Therefore, while the superior court properly reduced Rice's criminal fine from $600,000 (three times $200,000) to $150,000, it did not err in imposing mandatory fees and surcharges. *See, e.g.*, A.R.S. §§ 12-116.01(A)–(C) (55% surcharges), 12-116.02(A) (13% surcharge), 12-116.09(A) (victims' rights assessment), 16-954(A) (10% surcharge).

**¶49**        Next, Rice argues the fines, fees, and surcharges are together unconstitutionally excessive. *See* U.S. Const. amend. 8; Ariz. Const. art. II, § 15. "[A]n excessive fine is one that exceeds reasonable, usual, proper, or just punishment." *Wise*, 164 Ariz. at 576. To be unconstitutional, the fine must be "so disproportionate to the offense that it shocks public sentiment" and "exceeds any reasonable requirements for redressing the wrong." *Id.*

**¶50** On appeal, Rice points to her "lack of resources, lack of assets, limited education and physical disabilities," as well as the need to provide for her children. *See id.* (noting ability to pay is relevant). But "the [superior] court does not have to explicitly consider the defendant's ability to pay when imposing a fine," *State v. Lopez*, 175 Ariz. 79, 81 (App. 1993), and Rice concedes trial counsel failed to develop a record on this issue.

**¶51** Nor is ability to pay dispositive. *Wise*, 164 Ariz. at 576 (listing other factors). Here, the sizeable fines imposed under A.R.S. § 13-3407(H) reflect "a strong public commitment to eradicating the use of illicit drugs." *See id.* at 576. Rice's "place in the drug distribution chain" is not determinative because "[a] large fine directed at anyone in the drug trade is a rational attempt to cripple the industry." *Id.*

**¶52** The $267,064 fine was not unconstitutionally excessive, given that Rice was found guilty of transporting for sale 151 pounds of methamphetamine, worth over $200,000 at a wholesale valuation. *See id.* ("A fine of less than half the street value of the drugs involved is not shocking, even if it is imposed on one who is not a kingpin in the enterprise.") We also note that Rice voluntarily proceeded to trial after the superior court cautioned that, if convicted, she would face "a mandatory fine of twice the value of the drugs seized, up to $150,000, plus a 78 percent surcharge." The court did not err in assessing the $150,000 statutory maximum fine, plus $117,000 in surcharges, and $64 in fees.

## CONCLUSION

**¶53** For the reasons above, we affirm.

